IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ALTO ELDORADO PARTNERS,**
**RANCHO VERANO, LLC, CIMARRON**
**VILLAGE, LLC, DENNIS R. BRANCH,**
**and JOANN W. BRANCH,**

        Plaintiffs,

vs.                                                                                       Civ. No. 08-175 MV/ACT

**THE CITY OF SANTA FE,**
**and THE COUNTY OF SANTA FE,**

        Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Defendant City of Santa Fe's Motion to Dismiss for Lack of Standing filed April 11, 2008 [Doc. 15]. An Order of Reference referring this matter to the undersigned was filed on July 15, 2008 [Doc. 49].[1] The Court has reviewed Defendant's motion and memorandum brief [Docs.15, 17], Plaintiffs' response [Doc. 24] and Defendant's reply [Doc. 32] and determined that it is not necessary to conduct a hearing.

**Background.**

---

[1] Pursuant to 28 U.S.C § 636(b)(1)(C) within ten (10) days after a party is served with a copy of these proposed findings and recommended disposition that party may file objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas, N.W., Albuquerque, NM, 87102. A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

1.      On February 15, 2008, Plaintiffs filed a "Complaint for Injunctive Relief for Violation of Civil Rights and New Mexico State Law" ("Complaint"). Plaintiffs seek to have affordable housing ordinances enacted by the City of Santa Fe ("City") and the County of Santa Fe ("County") declared invalid, and further seek an injunction prohibiting the City and County from enforcing their affordable housing ordinances.

2.      Plaintiffs allege that the Santa Fe Home Program ("SFHP") "imposes upon owners of property within the jurisdiction of the City a variety of conditions which must be met before the property owners are permitted to subdivide or otherwise develop their properties." Complaint at ¶ 11. Among these conditions is a requirement that 30% of the total number of dwelling units be sold at or below a designated affordable housing price to buyers whose income is between 50 and 100% of area median income. *Id*. at ¶ 12. The SFHP Ordinance allows for certain density bonuses and waivers of certain impact and development fees. *Id*. at ¶ 15. Property owners may be allowed to pay a fee in lieu of providing affordable housing. *Id.* at ¶¶ 13, 18.

3.      In the Complaint Plaintiffs make the following allegations concerning themselves:

> 1.      The Plaintiffs are residents of or are engaged in business in the County of Santa Fe.
>
> ....
>
> 6.      The Plaintiffs are engaged in various professions, businesses and transactions that involve or are dependent upon the development and sale or rental of residential properties in the City and County of Santa Fe.
>
> 7.      Alto Eldorado Partners, Ranch Verano, LLC and Cimarron Village, LLC all own parcels of land in Santa Fe County which have master plan approval and these Plaintiffs intended to proceed with the development of their properties but are being impacted by the County ordinance relating to affordable housing as is described herein.
>
> 8.      The Plaintiffs Branch are involved in residential developments within the City of Santa Fe and are being impacted by the City ordinance relating to affordable housing as described herein.

Complaint at ¶¶ 1,6-8.

4. Dennis Branch ("Branch") filed an affidavit attached to Plaintiffs' response identifying projects within the city limits of Santa Fe he was actively developing through a limited liability company or himself personally.[2] In response Kathy McCormick ("McCormick"), Director of Santa Fe City's Housing and Community Development Office, filed an Affidavit concerning the projects identified by Branch. McCormick also provided background concerning the SFHP Ordinance which the Court will quote in full.

> 4. The HOP Ordinance, the City's first inclusionary zoning ordinance, was adopted by the Santa Fe City Council in 1998. Under the HOP Ordinance, property owners within the City seeking to develop their property were required to first submit to the City a "HOP Proposal" which set forth the terms and conditions by which the property would be developed in compliance with the HOP Ordinance. If the HOP Proposal was accepted by the City, and the property owner wanted to proceed with development, the City and the property owner then entered into a "HOP Agreement," which set out the terms and conditions of the development in more detail. Pursuant to the HOP Ordinance, and as set forth in the HOP Proposal, if the property owner transferred the property after the HOP Proposal, but prior to a HOP Agreement, the transferee would be required to execute a HOP Agreement consistent with the HOP Proposal.
>
> 5. The SFHP Ordinance was adopted on August 25, 2005, and amended on October 29, 2007. The SFHP Ordinance supersedes the HOP Ordinance, except that all agreements that were required to be executed by the HOP Ordinance, and all agreements that incorporated HOP provisions by reference, remain in full force and effect. SFHP Ordinance at Section 26-1.8D.

McCormick Aff. at ¶¶ 4 and 5.

*Branch properties*.

5. a. Arroyo En Medio Subdivision Phases II and III. Branch asserts he was developing this project beginning in 2001. Branch Aff. at ¶ 2a. McCormick states that this development was not subject to the SFHP or HOP Ordinance. McCormick Aff. at ¶ 11.

---

[2] The Court notes that Branch does not assert that these properties are subject to the SFHP Ordinance.

  b. Garcia Street Casitas. Branch asserts he has been developing this property from about 2004 to the present. Branch Aff. at ¶ 2b. McCormick states that no projects identified as Garcia Street Casitas are subject to the SFHP Ordinance or subject to any affordable housing requirements. McCormick Aff. at ¶ 12.

  c. Casa de Cipriano. Branch asserts he was developing this project during the years 2004-05. Branch Aff. at ¶ 2c. McCormick asserts that this development was governed by a HOP Agreement entered into between the City and Branch on August 9, 2006. McCormick Aff. at ¶ 9.

  d. Park/Guadalupe Street Condominium. Branch asserts that he was developing this project in 2005. Branch Aff. at ¶ 2d. McCormick states that a project by that name is not subject to the SFHP Ordinance or to any affordable housing requirements. McCormick Aff. at ¶ 12.

  e. Villas La Canana. Branch asserts he was developing this subdivision in approximately 2005. Branch Aff. at ¶ 2e. McCormick states that Branch executed the HOP Agreement as the managing partner of Realty 3000, LLC on February 27, 2003. McCormick Aff. at ¶ 10.

  f. Emanual Place Subdivision. Branch asserts that from 2005 to the present he "has worked on obtaining subdivision approvals ....which I was to then purchase following my obtaining the approvals. However, because of affordable housing requirements, I could not afford to purchase the subdivision and lost that opportunity[.]" Branch Aff. at ¶ 2f. McCormick states that this project was governed by a HOP Agreement, but there is a pending voluntary election by the property owner to develop the property subject to the SFHP Ordinance. McCormick Aff. at ¶ 6.

    g. Sanchez Family Heirs Subdivision.  Branch asserts he obtained approvals for this subdivision in about 2007 and sold it because the "affordable housing requirements made any profitable return speculative."  Branch Aff. at ¶ 2g.  McCormick asserts that Branch made a HOP Proposal on June 9, 2005, and that a HOP Agreement was entered into on January 29, 2007, between the City and Sanchez Development.  McCormick Aff. at ¶ 7.

    h. Vistas Bonitas Subdivision.  Branch asserts he is currently developing this subdivision and that "because of the affordable housing obligations, any profit margins are at best tight and depend upon my continued success at building below market and quick sales."  Branch Aff. at ¶ 2g.  McCormick states that this subdivision is subject to a HOP Agreement, not the SFHP Ordinance.  McCormick Aff. at ¶ 8.

6. The City asserts that the Plaintiffs have no standing because they do not own any property in the City of Santa Fe subject to the SFHP Ordinance and thus Plaintiffs' Complaint against the City must be dismissed.

**Legal Standard.**

7. Issues of subject matter jurisdiction are properly raised pursuant to Federal Rule Civil Procedure 12(b)(1).  *Kegler v. United States Department of Justice*, 436 F. Supp. 2d 1204 (D. Wyo. 2006) citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995).  "It is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute."  *Id*. at 1208.  In analyzing the issue of standing the court must "treat as true all nonconclusory allegations of the complaint and, in construing statements made in affidavits, will afford the complaining party the benefit of any factual doubts.  *Id. citing Warth v.*

*Seldin*, 422 U.S. 490, 501 (1975); *D & F Afonso realty Trust v. Garvey*, 216 F.3d 1191, 1194 (D.C. Cir. 2000)

**Standing.**

8. As the Supreme Court has recently noted, "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). Standing provides "justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In order to establish Article III standing, a plaintiff must meet three requirements: (1) a plaintiff "must have suffered an injury in fact – an invasion of a legally protected interest which is a (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant;" and (3) "it must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, it is not sufficient to allege a constitutional violation; a plaintiff must sufficiently allege an injury suffered as a consequence of the constitutional violation. *Heath v. Board of County Commissioners of Boulder Co.*, 92 Fed. Appx 667, 672 (10th Cir. 2004),

9. Even if Plaintiffs sufficiently alleged a redressable injury, they must satisfy prudential standing considerations. Plaintiffs must show that their Complaint falls within "the zone of itnerests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc*. 454 U.S. 464, 475

(1982). In addition the Court will refrain from adjudicating "abstract questions of wide public significance which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Id.* The prudential standing rule "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin*, 422 U.S. at 509.

10.     In addition, Plaintiffs must demonstrate standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000).

**Discussion.**

*Count I.*

11.     In Count I, Plaintiffs allege that the burdens imposed by the City and County Ordinances on property owners who wish to subdivide or develop their properties constitute an illegal taking of property that is barred by the Fifth Amendment to the U.S. Constitution. Complaint at ¶¶ 30-41. The Takings Clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V, Takings Clause. "[W]here the government....regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 523 (1992) (citation omitted).

12.     In alleging that the enactment of the SFHP Ordinance constitutes a taking, Plaintiffs assert a facial challenge to the SFHP Ordinance. The test applied in a facial taking is whether the

"statute regulating the uses that can be made of property effects a taking if it 'denies an owner economically viable use of his land....'" *Hodel v. Virginia Surface Mining and Reclamation Association, Inc.*, 452 U.S. 264, 296 (1981) (citations omitted). Thus, to analyze the "takings" claim, the Court will decide the effect of the statute on the owner of the land. As such, standing requires that the Plaintiffs allege that they own the property the City has allegedly taken. *Carson Harbor Village, Ltd.* v. *City of Carson*, 37 F.3d 468, 476, o*verruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (plaintiff making a facial takings challenge "need not show how his particular property is affected, [but] for standing purposes he must at the least demonstrate that he was a property owner subject to the statute at the time of its enactment.").

13. The Plaintiffs do not allege they own property subject to the SFHP Ordinance. The Branch Affidavit does not assert that he owns property subject to the SFHP Ordinance. Moreover, the McCormick Affidavit demonstrates that he does not. The Emanuel Place Subdivision project, the Sanchez Family Heirs Subdivision project, the Vistas Bonitas Subdivision approvals project, the Casa de Cipriano project and the Villas La Canada project are governed by the HOP Ordinance.[3] McCormick Aff. at ¶¶6-10. The Arroyo En Medio Phases II and III Project, the Garcia Street Casitas, and the Park/Guadalupe Street Condominium project were not subject to the City's SFHP Ordinance or any affordable housing ordinance. McCormick Aff. at ¶¶ 11-12.

14. Plaintiffs have no standing to bring suit against the City under the Fifth Amendment "takings" clause.

---

[3] As to the Emanuel Place Subdivision project, the fact that the property owner of a project governed by a HOP Agreement may voluntary elect to develop property subject to the SFHP Ordinance does not establish standing. Standing is determined at the time the complaint is filed. *Smith v. U.S. Court of Appeals, Tenth Circuit*, 484 F.3d 1281, 1285 (10th Cir. 2007) (citation omitted). In addition, there would be no injury if a property owner voluntary subjects itself to the challenged legislation.

*Count II.*

15.     In Count II, Plaintiffs allege that the City Ordinance singles out property owners who wish to subdivide or develop their properties without a rational basis for doing so and thus are barred by the equal protection clause of the First and Fourteenth Amendments to the U.S. Constitution. Complaint at ¶¶ 43-46.[4]  The equal protection clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, Equal Protection Clause. When the government treats plaintiffs differently than it treats similarly situated individuals, it implicates plaintiffs' right to equal protection. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

16.     In their Complaint Plaintiffs allege that property owners are suffering differential treatment not themselves. Plaintiffs did not demonstrate an injury in fact and thus do not have standing under this claim.

*Count III.*

17.     In Count III, Plaintiffs allege they "have a property right and liberty interest in being able to develop their properties," and that the City's actions were arbitrary and capricious in violation of Plaintiff's right to substantive due process guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution. Complaint at ¶¶ 48-50. Substantive due process protects individual liberty against certain government actions. *Bolden v. City of Topeka*, 546 F. Supp. 2d 1210, 1215-16 (D. Kan. 2008) *citing Daniels v. Williams*, 474 U.S. 327, 331 (1986); *see also Archuleta v. Colo. Dep't of Insts., Div. of Youth Serv.*, 936 F.2d 483, 490 (10th Cir. 1991) (substantive due process guarantees

---

[4]The First Amendment does not have a "due process" clause. The Fifth Amendment has a due process clause, however, it applies to the federal government. *Washington v. Davis,* 426 U.S. 229, 239 (1976). ("[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups.")

that the state will not arbitarily deprive a person of life, liberty or property regardless of how fair the procedures are that are used to make the decision).

19. To demonstrate an injury in fact Plaintiffs must allege that the SFHP Ordinance affects their substantive right to develop their properties. As the Plaintiffs are not property owners subject to the SFHP Ordinance, they have not shown they have this right and thus have no standing under this claim.

*Count IV.*

19. Count IV alleges a claim for injunctive relief and attorneys' fees under 42 U.S.C. §§ 1983 and 1988. Complaint at ¶¶ 52-55. Section 1983 provides a federal civil cause of action against state officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983 . "The core inquiry under any § 1983 action ... is whether the plaintiff has alleged an actionable constitutional violation." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir.2007). The Plaintiffs have not shown they have standing to bring their alleged constitutional claims and thus have no standing under 42 U.S.C. § 1983. As Plaintiffs cannot prevail they have no standing to be awarded attorneys' fees under 42 U.S.C. § 1988.

*Counts V and VI.*

20. Plaintiffs allege that the SFHP Ordinance is an illegal tax on property owners and violates New Mexico statutory provisions that prohibit municipalities or counties from enacting rent control ordinances. Complaint at ¶¶ 57-62, 64-67. These are state claims over which the Court recommends that pendent jurisdiction be denied.

*Declaratory and Injunctive relief.*

21.     In the "[w]herefore" clause Plaintiffs ask the Court to declare the SFHP Ordinance invalid and enjoin Defendants from enforcing the SFHP Ordinance. Plaintiffs must establish standing as a prerequisite for declaratory relief. *Rector v. City and County of Denver*, 348 F.3d 935, 946 (10th Cir. 2003) (affirming dismissal of request for declaration that city ordinance is unconstitutional, on the basis that "the abstract possibility that Plaintiffs may receive a contestable parking ticket in the future certainly does not satisfy Article II's requirements."). Plaintiffs present only an abstract case before this Court as they own no property affected by the SFHP Ordinance.

22.     As to injunctive relief, Plaintiffs must demonstrate a "personal stake in the outcome." *F.E.R. v. Valdez*, 58 F.3d 1530, 1534 (10th Cir. 1995). Plaintiffs must demonstrate a sufficient likelihood that they will be harmed in the future by the allegedly illegal conduct. *Id.* Plaintiffs' allegations that they will be harmed because they "are engaged in various professions, business and transactions that invovle or are dependent upon the devleopment and sale or rent of residential properties in the City and County of Santa Fe[.]" is insufficient to confer standing for injunctive relief. They have not alleged a specific future injury and therefore lack standing.

23.     Even if the Plaintiffs alleged a redressable injury, they fail to meet the prudential standing requirements. The "zone of interest" regulated by the SFHP Ordinance is property owners. When applying the takings clause, the equal protection clause and the due process clause to land use regulations, these protections protect the rights of property owners. Plaintiffs' allegations are more of a "generalized grievance" more appropriately addressed to the City's legislative branch of government, not the federal court. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. at 474-75.

24.     Plaintiffs rely almost exclusively on *Initiative and Referendum Institute, et al. v. Walker*, 450 F.3d 1082 (10th Cir. 2006) (en banc), *cert. denied* (2007).  Plaintiffs' reliance is wholly misplaced. *Initiative and Referendum Institute v. Walker* case involves a First Amendment challenge. Standing requirements in a First Amendment case are different from standing requirements involving other constitutional challenges.  In First Amendment cases the standard is "relaxed."  A plaintiff who alleges a "chilling effect" may meet Article III jurisdictional requirements because the chilling effect itself is a First Amendment injury.  *Smith v. U.S. Court of Appeals, Tenth Circuit,* 484 F.3d at 1285 (*Broadrick* recognized an exception to the traditional standing requirement of injury personal to the litigant when the litigant challenges a "statute[] attempting to restrict or burden the exercise of First Amendment rights," [*Broadrick v. Oklahoma,* 413 U.S. 601] at 611....permitting in those circumstances the assertion of a chilling effect on others' constitutionally protected speech to serve as a redressable injury."). Such an analysis is inapplicable to this matter as Plaintiffs have not alleged a First Amendment challenge to the SFHP Ordinance.  Moreover, the Court found no support for applying these requirements outside a First Amendment challenge.  *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150 (10th Cir. 2006) (An injury in fact does not automatically occur by "[t]he mere presence on the statute books of an unconstitutional statute....,even if [plaintiffs'] allege an inhibiting effect on constitutionally protected conduct prohibited by the statute."); *Winsness v. Yocum,* 433 F.3d 727, 732 (10th Cir. 2006).

25.     In the remaining cases relied on by the Plaintiffs,  plaintiffs demonstrated an injury in fact by the challenged legislation.  In *Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007) nonresident citizen university students challenged the constitutionality, and legality under federal law, of a statute allowing undocumented or illegal aliens to attend Kansas universities and pay resident or in-state

12

tuition. The court found that Plaintiffs did not have standing because they could not demonstrate a redressable injury. They did find that the Plaintiffs had alleged an injury in fact because plaintiffs were students who were paying tuition.

26. In *Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221 (10th Cir. 2004), the court found that plaintiffs had demonstrated an injury in fact because the plaintiffs had applied for advisory committees and had been rejected. The plaintiffs were injured by the procedures for such appointments that they alleged had interfered with their opportunity to seek such appointments.

27. *Clajon Production Corp. v. Petera*, 70 F.3d 1566 (10th Cir. 1995) does not support Plaintiffs' standing argument. The court affirmed summary on the grounds that the claim was not ripe. The court did not address plaintiffs' standing under the Takings Clause and Equal Protection Cause claims. The Court further ruled that the plaintiffs, who were landowners, did not demonstrate a redressable injury.

28. Finally, in *In Re: Special Grand Jury 89-2*, 450 F.3d 1159 (10th Cir. 2006), the court found that members of a federal grand jury had standing to challenge a grand jury secrecy requirement. The plaintiffs were directly affected by the challenged requirement unlike the Plaintiffs in the instant case.

*State law claims*.

29. There is no federal claim left in the case, and the Court does not have federal question jurisdiction. The Court thus declines to exercise jurisdiction over any state law claim against the City. Section 1367 of Title 28 provides the district court with discretion to dismiss a claim premised on supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a

claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction. . . .").  A district court is "well within its discretion in declining supplemental jurisdiction over the remainder of a case when it dismisses a plaintiff's federal claims." *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1139 (10th Cir. 2004).

**Conclusion**.

30.     For all the foregoing reasons, the Court recommends that Plaintiffs' Complaint against the City of Santa Fe be dismissed without prejudice.

## RECOMMENDED DISPOSITION

31.     I recommend that Plaintiffs' Complaint against the City of Santa Fe and all of their federal and state claims therein be dismissed without prejudice.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**