### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

ALTO ELDORADO PARTNERS,
RANCHO VERANO, LLC, CIMARRON
VILLAGE LLC, DENNIS R. BRANCH
AND JOANN W. BRANCH,

       Plaintiffs,

vs.                                                                          No. CIV 08-0175 JB/ACT

THE CITY OF SANTA FE and
THE COUNTY OF SANTA FE,

       Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) Defendant City of Santa Fe's Motion to

Dismiss for Lack of Standing, filed April 11, 2008 (Doc. 15)("Motion to Dismiss"); (ii) the

Plaintiffs' Opposition to Magistrate Judge's Proposed Findings and Recommended Decisions, filed

October 2, 2008 (Doc. 64)("Objections"); and (iii) the Motion to Supplement the Record, filed

October 5, 2008 (Doc. 66)("Motion to Supplement").  The Court held a hearing on January 8, 2009.

The primary issue is whether the Plaintiffs have presented sufficient facts to establish that they have

standing to challenge the City of Santa Fe's affordable housing ordinance (the "City Ordinance").

A secondary issue is whether the Court should allow the Plaintiffs to provide additional evidence

and argument that was not before the Magistrate Judge to whom the Motion to Dismiss was

originally referred.  Because the Plaintiffs have not waived their rights to present additional

arguments and the interests of judicial economy favor allowing additional argument on jurisdiction

at this stage, the Court will consider all the issues that the Plaintiffs have raised.  The Court will also

grant the Motion to Supplement and consider the new evidence the Plaintiffs offer, although the

evidence does not change the result here.  Ultimately, the Court believes that the Plaintiffs have not demonstrated that they have standing to challenge the City Ordinance and will therefore overrule their objections to the Magistrate Judge's report and grant the Motion to Dismiss.

## FACTUAL BACKGROUND

This case concerns challenges under both the United States and New Mexico Constitutions, as well as New Mexico state law, to the City Ordinance and to the County of Santa Fe's similar affordable housing ordinance (the "County Ordinance").  The Plaintiffs are developers active in the City and County of Santa Fe.  They contend that the City and County Ordinances are legally invalid on a variety of theories.  In essence, however, their claims are that the Ordinances deprive developers of their property by forcing them to set aside significant portions of their developments for affordable housing, at a loss to the developers.

### 1.    The Complaint.

For the purposes of describing the background facts, the Court will assume that the allegations in the Complaint are true.[1]  The Court focuses here on the allegations relevant to the City Ordinance.  "The Plaintiffs are engaged in various professions, businesses and transactions that involve or are dependent upon the development and sale or rent of residential properties in the City and County of Santa Fe."  Complaint for Injunctive Relief for Violation of Civil Rights and New Mexico State Law ¶ 6, at 2, filed February 15, 2008 (Doc. 1)("Complaint").  Plaintiffs Dennis R.

---

[1] The bulk of the Complaint is devoted to the Plaintiffs' characterization of the Ordinances and their effect, which are legal issues or mixed issues of law and fact, that the Court is not required to accept as true.  Additionally, on a motion under rule 12(b)(1) of the Federal Rules of Civil Procedure that includes affidavits, the Court need not and perhaps should not automatically accept allegations as true.  Nonetheless, as discussed later, there is no real dispute about the truth of any facts here; rather, the parties have competing views about the proper interpretation of facts and what all the Court needs to consider.  The Court will therefore lay out the Complaint's allegations as if this were a more typical 12(b)(1) or 12(b)(6) motion.

Branch and Joann W. Branch (the "Branch Plaintiffs") are involved in residential developments in the City of Santa Fe that "are being impacted by" the City Ordinance.  Complaint ¶ 7, at 2.

The City Ordinance requires that thirty-percent of proposed subdivided lots have road and utility infrastructure improvements and residences that are to be sold to qualified buyers -- defined as people whose incomes are from fifty to one-hundred percent of the area average.  See Complaint ¶ 12, at 2.  These set-aside lots must be sold at below-market value.  See id. at 2-3.  This scheme effectively requires property owners to not only dedicate some of their property to others, but requires property owners to become home builders.  See Complaint ¶ 23, at 3.[2]

In lieu of providing affordable housing, owners may, at the City of Santa Fe's discretion, pay money to the City.  See id. ¶ 13, at 3.  The Plaintiffs acknowledge that the City Ordinance allows for density bonuses -- which permit an owner to add more lots or units -- and fee waivers, but state that the waivers only defray some of the losses owners suffer.  See Complaint ¶ 15, at 3.  The density bonuses are a more complicated story.  While allowing for more lots, decreased lot sizes may depreciate the overall value of a subdivision, push the subdivision into a category requiring more extensive infrastructure, or even not be given at all because of neighborhood opposition or other legal restrictions.  See id.

When affordable housing units are resold, the difference between the resale price and the original affordable housing price is split between the City of Santa Fe and the qualified buyer.  See id. ¶ 16, at 4.  This provision effectively denies the original developer any profit after the developer builds the home at a personal loss.  See id. ¶ 17, at 4.  All funds the City receives under the

---

[2] The paragraph after 12 is labeled 23.  Given that the Complaint also contains a paragraph 13 and a paragraph 23, the Court will retain the numbering in its citations, trusting in the page numbers to distinguish paragraphs.

Ordinance go into a trust fund that is to be used exclusively for affordable housing purposes.  See Complaint ¶ 21, at 4.

To make projects viable, developers are forced to increase prices on the non-affordable housing lots -- or market lots -- to recover losses the City Ordinance forces on them, helping drive housing prices out of the reach of the middle class.  See Complaint ¶¶ 19-20, at 4.  Additionally, the City Ordinance limits the amount of rent certain owners may charge for rental units.  See Complaint ¶ 22, at 5.

The Plaintiffs maintain that the City Ordinance amounts to an unconstitutional taking because the Ordinance lacks any reasonable nexus between the activity of developing property and the problem of providing affordable housing, because it places disproportionate burdens on owners, because it requires property owners to sell property at below-market rates, and because it transfers resale profits to buyers or to the City, and may in some cases requires direct payment to the City. See Complaint ¶¶ 30, 32-40, at 7-8.  Property owners are not compensated for these effects. See id. ¶ 41, at 8.  The Plaintiffs also maintain that the City Ordinance singles out property owners wishing to develop or to subdivide property without any rational basis for doing so and is an arbitrary exaction.  See Complaint ¶¶ 43-46, 48-50, at 9-10.  The Plaintiffs further assert that the City Ordinance effectively taxes property owners without any legal authority and without being uniformly applied in a rational manner.  See Complaint ¶¶ 58-62, at 11.  Finally, the Plaintiffs state that the City Ordinance imposes unauthorized rent controls.  See Complaint ¶¶ 64, 66-67, at 12.

### 2.    **The Affidavits.**

In addition to the Complaint, the Plaintiffs have offered two affidavits that they maintain support their standing to bring this action.  The City of Santa Fe has also offered an affidavit.  Two of the affidavits -- Dennis Branch's first affidavit, in support of the Plaintiffs, and Kathy

McCormick's affidavit, in support of the City -- were submitted in connection with the motion to dismiss.  The Plaintiffs have also submitted a second affidavit from Dennis Branch in response to the Magistrate Judge's recommendation of dismissal.  This last affidavit is the subject of the Motion to Supplement.

In his first affidavit, Dennis Branch states that he has been actively developing real estate within the city limits of Santa Fe.  See Affidavit of Dennis Branch ¶ 2, at 1 (executed April 28, 2008)(Doc. 24-2)("Branch Aff.").  He asserts that development has been his primary source of income for the last five years, see id. ¶ 3, at 2, but that the City Ordinance has left very few development projects that look like they might be profitable, see Branch Aff. ¶ 4, at 3.  He states that the City Ordinance has foreclosed most development opportunities, which has affected his "ability to make a living."  Branch Aff. ¶ 6, at 3.

Dennis Branch also identifies a number of projects in which he has been or is involved.  In particular, he states that, starting in 2005, he worked on obtaining approvals for the Emanual Place Subdivision, which he was going to purchase, but that because of affordable-housing ordinances, he was unable to afford to buy the subdivision.  See Branch Aff. ¶ 2.f., at 2.  He states that he owned another subdivision, the Sanchez Family Heirs Subdivision, but sold it because "affordable housing requirements made any profitable return speculative."  Id. ¶ 2.g., at 2.  Finally, he also avers that he is currently developing the Vistas Bonitas Subdivision and complying with the affordable housing ordinance.  He is able to do so, he maintains, because he got the property cheap and is able to leverage the construction slowdown into lower construction costs, but that affordable-housing requirements nonetheless are making profit margins tight at best.  See id. ¶ 2.h., at 2.

McCormick is the Director of the City of Santa Fe's Housing and Community Development Office.  See Affidavit of Kathy McCormick in Support of Defendant City of Santa Fe's Reply to

Plaintiffs' Response to Motion to Dismiss All Claims for Lack of Standing ¶ 1, at 1, filed May 20, 2008 (executed May 19, 2008)(Doc. 34)("McCormick Aff."). McCormick states that the City had an earlier ordinance, the HOP Ordinance, under which property owners submitted proposals to the City, and, if approved, the City and the owner would enter into a HOP Agreement. See McCormick Aff. ¶ 4, at 102. The new City Ordinance supersedes the old HOP Ordinance, but all agreements under the HOP Ordinance must still be executed. See McCormick Aff. ¶¶ 4-5, at 1-2. McCormick states that the three subdivisions Dennis Branch mentions as being subject to affordable-housing regulations are, more accurately, subject to the old HOP Ordinance and not to the new City Ordinance. See McCormick Aff. ¶¶ 6-8, at 2-3. McCormick also notes that there is a new agreement pending between Emmanuel Ramirez, the owner of the Emanuel Place Subdivision, and the City, under the new City Ordinance, but that Ramirez could have elected to continue pursuant to the older HOP Agreement for that subdivision. See McCormick Aff. ¶ 6, at 2-3.

In his second affidavit, Dennis Branch states that, along with a partner, he has purchased real property in the City of Santa Fe -- the Tierra Vista Subdivision. See Affidavit of Dennis Branch II ¶ 1, at 1, filed October 5, 2008 (executed October 3, 2008)(Doc. 65)("II Branch Aff."). Dennis Branch purchased the property on November 15, 2007, and states that he retains an ownership interest in the subdivision through a controlled entity. See id. ¶ 2, at 1. He asserts that the Tierra Vista Subdivision is subject to the City Ordinance. See II Branch Aff. ¶ 3, at 1. He also owns additional property in the City of Santa Fe that he asserts he is "currently attempting to subdivide." Id. ¶ 4, at 1. These two pieces of property were both transferred to him February 27, 2008. See Exhibits B & C to II Branch Aff., Warranty Deeds (dated February 27, 2008)(Doc. 65-2).

## PROCEDURAL BACKGROUND

The Plaintiffs filed this lawsuit challenging both the City and County Ordinances. Their

Complaint raises six counts: (i) unconstitutional taking of property under the Fifth Amendment; (ii) equal protection; (iii) substantive due process; (iv) injunctive relief under 42 U.S.C. § 1983 and attorneys' fees under § 1988; (v) taxation without authorization and in violation of article VII of the New Mexico Constitution; and (vi) illegal rent control in violation of N.M.S.A. 1978 § 47-8A-1. The Plaintiffs request that the Court declare the City and County Ordinances invalid, enjoin the Defendants from enforcing their respective ordinances, and grant the Plaintiffs their costs and attorneys' fees.

The City of Santa Fe moved to dismiss the Complaint under rule 12(b)(1) of the Federal Rules of Civil Procedure. According to the City, the Plaintiffs have failed to allege that they own any property within the City of Santa Fe or that is otherwise subject to the City Ordinance, and therefore they lack standing. The Honorable Martha Vazquez, Chief United States District Judge, referred the motion to the Honorable Alan C. Torgerson, United States Magistrate Judge, for a recommended disposition. Judge Torgerson recommended that the Court grant the motion to dismiss. The Plaintiffs objected to Judge Torgerson's recommendations and also filed a motion to supplement the record. The case was reassigned, after a brief layover with the Honorable C. LeRoy Hansen, Senior United States District Judge, to this judge.

### 1.    The Initial Briefing.

The City moves to dismiss the Complaint against them on the grounds that none of the Plaintiffs have standing to challenge the City Ordinance. The City principally bases its attack on the Plaintiffs' standing on the Complaint's failure to allege that any of the Plaintiffs own property in the City of Santa Fe. According to the City, the Plaintiffs have alleged only "that they are 'engaged in various professions, businesses and transaction that *involve* or *are dependent upon* the development and sale or rent of residential properties in the City and County of Santa Fe,' . . . and

that they are 'involved in residential developments within the City.'"  Defendant City of Santa Fe's Memorandum in Support of Motion to Dismiss All Claims for Lack of Standing at 8, filed April 14, 2008 (Doc. 17)("Memo. in Support")(quoting Complaint ¶¶ 6, 8, at 2)(emphasis added by Memo. in Support).  Additionally, the City notes that the Branch Plaintiffs have made the "vague and conclusory allegation" that they are "being 'impacted by' the" City Ordinance.  Memo. in Support at 8 (quoting Complaint ¶ 8, at 2).

The City argues that ownership is a prerequisite to a taking and that the Supreme Court of the United States has cautioned that, particularly in takings cases, decisions should not be made in the abstract, without a concrete factual basis.  See Memo. in Support at 7-8.  The City contends that the Plaintiffs' other constitutional claims are also tied up with ownership.  The City maintains that the Plaintiffs "fail to allege an injury that is concrete and particularized and that is actual or imminent, rather than conjectural or hypothetical."  Id. at 8.  The City also contends that the Plaintiffs have failed to show redressability because they lack "an actual stake in any specific development subject to the" City Ordinance.  Memo. in Support at 9.  Additionally, the City argues that, even if the Plaintiffs have alleged facts to support Article III standing, they have not alleged sufficient facts for prudential standing.  The City contends that the various constitutional provisions the Plaintiffs invoke are meant to protect property owners, that the Plaintiffs are therefore not in the zone of interests those provisions protect, and that the Plaintiffs furthermore are raising a generalized grievance best dealt with through the representative branches.  See Memo. in Support at 10-11.

The City argues that, without standing, the Plaintiffs do not have a basis to pursue declaratory or injunctive relief.  See id. at 11-13.  The City also contends that, without standing on the federal claims, the Court should dismiss the pendent state-law claims.  See id. at 13-14.  The City

therefore asks that the Court dismiss all the claims against it.

The Plaintiffs counter that their claims are based not on ownership, but on their history of active engagement in the development of real property within Santa Fe, which they support with an affidavit from Dennis Branch.  They are not currently buying properties and submitting development plans to the City, they maintain, because of the City Ordinance.  See Plaintiff's Response to Defendant City of Santa Fe's Motion to Dismiss for Lack of Standing at 2, filed April 28, 2008 (Doc. 24)("Response").  Citing Initiative and Referendum Institute v. Walker, 450 F.3d 1082 (10th Cir. 2006)(en banc), they contend that the City Ordinance burdens their business activities and has a chilling effect that is sufficient to give them standing to sue.  See Response at 3-5.  Relying on several other cases, the Plaintiffs contend that they are suffering real injuries, directly traceable to the City Ordinance, and that a favorable decision would relieve them "of the crippling burdens of the ordinance."  Response at 9.

The City argues that the Plaintiffs' response fails to show they have standing.  The City notes that several of the Plaintiffs have not adduced any further facts.  The City acknowledges that the Branch Plaintiffs demonstrate ownership of several properties in Santa Fe, but contends that these properties are subject only to a previous housing ordinance and not to the ordinance being challenged here.  See Defendant City of Santa Fe's Reply to Plaintiffs' Response to Motion to Dismiss All Claims for Lack of Standing at 3-5, filed May 19, 2008 (Doc. 32)("Reply").

Turning to the specific claims, the City maintains that the Complaint alleges that the burdens the City Ordinance places "on *property owners*" constitute an illegal taking.  Id. at 5 (emphasis in original).  The City contends that the Plaintiffs' other allegations under federal law similarly depend upon property ownership.  See id. at 6-7.  As to the state claims, the City argues that the illegal-tax claim concerns allegations of an illegal tax on property ownership, while the rent-control claim also

requires a showing of ownership of rental property that would be subject to regulation. See id. at 8-9.

The City also argues that the cases on which the Plaintiffs rely are inapplicable. In particular, the City contends that Initiative and Referendum Institute v. Walker concerns standing to assert First-Amendment claims, which it maintains involves a relaxed standard that is not relevant to takings and related claims. See Reply at 9-10. The City also dismisses the remaining cases that the Plaintiffs cite as inapposite. See id. at 10-11.

After considering these arguments, Judge Torgerson issued a recommendation that the Court should dismiss the Complaint against the City of Santa Fe without prejudice. See Magistrate Judge's Proposed Findings and Recommended Disposition ¶ 30, at 13, filed September 12, 2008 (Doc. 60)("M.J. Op."). Judge Torgerson found that the Plaintiffs' takings, equal-protection, and due-process claims all involved the rights of property owners, and that the Plaintiffs had not alleged that they were owners of property subject to the City Ordinance. See M.J. Op. ¶¶ 12-13, 15 & 17 at 8, 9-10. Judge Torgerson agreed with the City's analysis that the cases the Plaintiffs cited were inapposite or distinguishable. See id. ¶¶ 24-28, at 12-13. Judge Torgerson therefore found that the Plaintiffs lacked standing, and recommended that the Court dismiss the federal claims and also decline to exercise supplemental jurisdiction over the state claims. See id. ¶¶ 29-31, at 12-13.

## 2.   **Proceedings After Judge Torgerson's Recommendations.**

The Plaintiffs object to Judge Torgerson's proposed disposition. The Plaintiffs argue that Judge Torgerson's opinion focuses too heavily on property ownership and largely ignores their contention that the City Ordinance targets developers rather than owners. See Objections at 2-3. The Plaintiffs cite Skull Valley Band of Goshute Indians v. Nielson, 376 F.3d 1223 (10th Cir. 2004), and the cases from which that decision draws, for the proposition that plaintiffs need not take on

great burdens before they have standing to challenge a law.  See Objections at 5-8.  They also criticize Judge Torgerson's opinion for defining the boundaries of the relevant zones of interest too narrowly.  See id. at 8-9.

The Plaintiffs further argue that Judge Torgerson's findings fail to encompass the concepts on which their Complaint relies.  They characterize their claims as largely arising under Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987), and Dolan v. City of Tigard, 512 U.S. 374 (1994). They contend that the City Ordinance singles out developers to bear the whole burden of an affordable-housing policy which the public at large should be sharing.  See Objections at 13.  The Plaintiffs conclude with  objections to many of the specific findings and recommendations that Judge Torgerson made.  See id. at 18-20.

In responding to the Plaintiffs' objection, the City first argues that the Plaintiffs have waived many of the contentions they raise.  The City contends that the Plaintiffs may not introduce new evidence or rely on cases that were not brought to Judge Torgerson's attention originally.  See Defendant City of Santa Fe's Response to Plaintiff's Opposition Magistrate Judge's Propose Findings and Recommended Decision at 2-3, filed October 27, 2008 (Doc. 71)("Response to Objections").  Additionally, the City maintains that the Plaintiffs have failed to make objections with the specificity that rule 72 of the Federal Rules of Civil Procedure require.  See Response to Objections at 3.

Addressing the merits of the Plaintiffs' arguments, the City contends that the Plaintiffs are continuing to advocate a flawed interpretation of takings law and the jurisprudence on standing.  The City asserts that many of the Plaintiffs' cases do not deal with regulatory-taking scenarios.  See id. at 5-6.  The City also maintains that the Plaintiffs are misreading the takings cases they cite, all of which, the City argues, involve plaintiffs asserting definite and concrete harms to their property.

See id. at 8-9.

As well as objecting to Judge Torgerson's recommendations, the Plaintiffs have moved the Court to allow them to supplement the record.  The Plaintiffs state that they do not agree that they need to own property in Santa Fe to have standing, but assert that they can present evidence showing they do own such property, which "would obviate the need for any further argument on the standing issue."  Motion to Supplement ¶ 4, at 2.

The City opposes any supplementation and argues that the Plaintiffs' attempt to bring in new evidence so far along in the litigation process is belated and prohibited under Tenth Circuit law.  See Defendant City of Santa Fe's Response to Plaintiffs' Motion to Supplement Record ¶ 7, at 3-4, filed October 27, 2008 (Doc. 72)("Response to Motion to Supplement").  The City contends that, regardless, the evidence involves property owned through controlled entities or property acquired after the Complaint was filed, and thus would not support standing.  See id. ¶ 8, at 4.  The City further asserts that bare ownership of property will not suffice to show any injury to the Plaintiffs.  See id. ¶ 9, at 5.  Finally, the City maintains that, by introducing such evidence, the Plaintiffs would be changing course, clouding the issues in the case, and prejudicing the City. See id. ¶ 10, at 5.[3]

The Plaintiffs counter that they, and particularly the Branch Plaintiffs, have established that the City Ordinance harms them.  They argue that, if they are able to meet the standing requirements Judge Torgerson's opinion lays out, they should be allowed to prosecute their case in the interest of judicial economy.  See Plaintiffs' Reply to the Defendant City of Santa Fe's Response to Plaintiffs' Motion to Supplement Record at 2-3, filed November 11, 2008 (Doc. 73)("Reply for Motion to Supplement").  Otherwise, they state, Dennis Branch will file "a new complaint based

---

[3] The City's response contains two paragraphs labeled paragraph 9.  The Court refers to the second paragraph 9 as paragraph 10.

upon his property ownership, move to consolidate and, months and thousands of dollars later, end up approximately where we are today." Id. at 4. They also maintain that they can establish standing through controlled entities owning property, because the impact of regulation ultimately falls on Dennis Branch, and that introducing the new evidence will not confuse issues because the standing question will recede into the background once standing has been established and the Court can order the Plaintiffs to amend their Complaint if needed for clarity. See Reply to Motion for Supplement at 3.

On January 8, 2009, the Court held a hearing on both the Plaintiffs' objections to Judge Torgerson's recommendations and on the related Motion to Supplement. Ronald J. VanAmberg, the Plaintiffs' counsel, argued that the property Dennis Branch owned which involved HOP Agreements was nonetheless technically subject to the new City Ordinance because, if he went back to the City for new approvals, he would have to comply with the City Ordinance. See Transcript of Hearing at 5:5-6:5 (taken January 8, 2009)(Court & VanAmberg)("Tr.").[4] Mr. VanAmberg clarified that the property would be subject to the new ordinance only if development stopped or if current approval were lost, neither of which the record indicated has happened. See id. at 6:6-7:10. Mr. VanAmberg also clarified that the Plaintiffs were asserting unconstitutional exaction, physical takings, and regulatory takings under Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978). See Tr. at 14:11-15:17 (VanAmberg).

John C. Bienvenu, the City's attorney, conceded that the Court had the discretion to consider the evidence that was not before Judge Torgerson as part of determining its jurisdiction. See id. at 25:17-26:15 (Court & Bienvenu). Mr. VanAmberg represented that the property which Dennis

---

[4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain different page and/or line numbers.

Branch owned through a controlled entity was owned through a limited liability company that Dennis Branch owned one-hundred percent.  See id. at 36:18-37:1 (VanAmberg).  Mr. VanAmberg also stated that, as part of his Motion to Supplement, were it granted, the best course of action would be for him to file an amended Complaint.  See Tr. at 113:8-14 (Court & VanAmberg).  Mr. Bienvenu  stated that he believed that would be futile and that a complaint could not be amended to establish jurisdiction, which needed to be present from the start of a case.  See id. at 113:20-114:18 (Court & Bienvenu).

### STANDARDS FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed.R.Civ.P. 12(b)(1).  The party invoking federal jurisdiction bears the burden of establishing its existence.  See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182-89 (1936); Miller v. United States, 710 F.2d 656, 662 (10th Cir. 1983).  This burden requires plaintiffs to demonstrate that they meet the constitutional requirements for standing.  See Nova Health Systems v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005)("As an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a 'case or controversy' that may be resolved by the federal courts. . . . As the party seeking to invoke federal jurisdiction, the plaintiff . . . has the burden of establishing each of [the constitutional elements] of Article III standing.")(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 660-61 (1992)).

With respect to motions to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1), the United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th

Cir. 2002), cert. denied, 538 U.S. 999 (2003).  These two forms of attack differ.  On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897 (1981).  But when the attack is factual,

> a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)(citations omitted).  As the United States Court of Appeals for the Fifth Circuit stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d at 412-13 (quoting Mortenson v. First Fed. Savings and Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977)).

## LAW REGARDING STANDING

A federal court may hear cases only where the plaintiff has standing to sue.  Standing has two components.  First, standing has a constitutional component arising from Article III's requirement that federal courts hear only genuine cases or controversies.  Second, standing has a prudential component.  See Habecker v. Town of Estes Park, Colo., 518 F.3d 1217, 1224 n.7 (10th Cir. 2008)(noting that, in addition to constitutional standing requirements, "the Supreme Court recognizes a set of 'prudential' standing concerns that may prevent judicial resolution of a case even

where constitutional standing exists").

### 1.     Article III Standing.

"Article III of the Constitution limits the jurisdiction of federal courts to Cases and Controversies." San Juan County, Utah v. United States, 503 F.3d 1163, 1171 (10th Cir. 2007); U.S. CONSTITUTION art. III, § 2. "In general, this inquiry seeks to determine 'whether [the plaintiff has] such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" Wyoming ex rel. Crank v. United States, 539 F.3d 1236, 1241 (10th Cir. 2008)(quoting Massachusetts v. EPA, 549 U.S. 497 (2007))(brackets in Wyoming ex rel. Crank v. United States, further internal quotation marks omitted). "[A] suit does not present a Case or Controversy unless the plaintiff satisfies the requirements of Article III standing." San Juan County, Utah v. United States, 503 F.3d at 1171. To establish standing, a plaintiff must show three things: "(1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision." Protocols, LLC v. Leavitt, 549 F.3d 1294, 1298 (10th Cir. 2008)(internal quotation marks omitted).

"'Standing is determined as of the time the action is brought.'" Smith v. U.S. Court of Appeals, for the Tenth Circuit, 484 F.3d 1281, 1285 (10th Cir. 2007)(quoting Nova Health Sys. v. Gandy, 416 F.3d at 1154). In Smith v. U.S. Court of Appeals, for the Tenth Circuit, the Tenth Circuit rejected a plaintiff's standing to challenge the Colorado appellate courts' practice of deciding cases in non-precedential, unpublished opinions, which the plaintiff asserted allowed courts to affirm incorrect decisions without interfering with official, "published" law. The Tenth Circuit noted that the plaintiff had recently taken his state appeal, and therefore "was in no position to challenge the

adequacy of state appellate review in cases culminating in unpublished opinions unless he could show that he would in fact receive such review from the state court of appeals (and from the state supreme court as well, if it took the case on certiorari)."  Id., 484 F.3d at 1285.

By contrast, in Nova Health Sys. v. Gandy, the Tenth Circuit found that abortion providers had standing to challenge a recently enacted Oklahoma parental-notification law on the grounds that they were in imminent danger of losing patients because of the new law.  Although finding standing, the Tenth Circuit was careful to frame the issue as whether, "as of June 2001 [the time the lawsuit was filed], Nova faced an imminent likelihood that it would lose some minor patients seeking abortions." Id., 416 F.3d at 1155.  While focusing on the time of filing, the Tenth Circuit, however, allowed the use of evidence from later events -- prospective patients lost because of the notification law after the lawsuit began -- to demonstrate that the plaintiff faced an imminent threat as of the time of filing.  See id.

### 2.    **Particular Cases.**

The Plaintiffs have identified a number of specific cases on standing to which they analogize their situation.   While the general principles governing standing are relatively clear and straightforward, their application to the myriad sets of facts the real world presents can be complicated.  Given the fact-intensive nature of determining standing, the Court will outline here the particular cases on which the Plaintiffs rely.

Day v. Bond, 500 F.3d 1127 (10th Cir. 2007), concerned an equal-protection challenge that non-resident students at Kansas colleges brought to a state statute that effectively allowed some undocumented aliens to pay lower tuition rates than out-of-state citizen students.  The Tenth Circuit found, in a footnote, that a couple of the plaintiffs' theories alleged injury in fact.  The theories that the Tenth Circuit found to involve injury in fact concerned the students having to pay extra tuition

and unequal treatment of the students because of an absolute legal barrier that made it impossible for the non-resident American citizen students to obtain benefits.  See id. at 1131, 1132-33 & 1133 n.4.

In Colorado Environmental Coalition v. Wenker, 353 F.3d 1221 (10th Cir. 2004), the plaintiffs raised a challenge to the procedures the Secretary of the Interior employed in appointing people to three Resource Advisory Councils in Colorado.  The plaintiffs did not have a right to be appointed, but the plaintiffs had all applied for positions and been denied appointments.  See id. at 1226, 1236.  In re Special Grand Jury 89-2, 450 F.3d 1159 (10th Cir. 2006), concerned whether grand jurors had standing to request a court to lift the obligation of grand-jury secrecy so they could talk about grand-jury proceedings.  The Tenth Circuit held that the grand jurors had a legally cognizable interest in challenging what was effectively a restriction on their speech and therefore had standing.  See id. at 1172-74.

Later, in their Objections, the Plaintiffs raise a new series of cases.  The plaintiffs in Skull Valley Band of Goshute Indians v. Nielson challenged Utah laws regulating spent nuclear fuel, contending that federal law pre-empted the state regulation.  The plaintiffs were seeking a license from the Nuclear Regulatory Commission to construct a private spent-fuel facility.  See 376 F.3d at 1228.  The Tenth Circuit held that the plaintiffs had standing to challenge the state laws because the state laws required a separate and extensive licensing procedure, and therefore imposed a substantial burden on the plaintiffs' proposed activities.  See id. at 1234-35.  The Tenth Circuit also held that the plaintiffs had demonstrated concrete injuries because they were "the subject of the challenged action."  Id. at 1235 (internal quotation marks omitted).

Skull Valley Band of Goshute Indians v. Nielson primarily cited a pair of licensing cases involving ripeness.  The Tenth Circuit noted that, "although standing and ripeness are technically

-18-

different doctrines, they are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention." Id. at 1234 (internal quotation marks omitted). The two cases on which the Tenth Circuit focused were: (i) Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock, 93 F.3d 68 (2d Cir. 1996); and (ii) Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind., 977 F.2d 287 (7th Cir. 1992).

In Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock, the plaintiffs were a demolition and excavation business and its owner. New York promulgated new regulations on the disposal of demolition debris, which the plaintiffs had previously stored on their property, and the plaintiffs applied for a permit to construct a landfill on their land under the new regulations. See 93 F.3d at 70. The town in which the landfill was to be located passed a law banning dumps. See id. at 70-71. The plaintiffs sued the town, contending that the law violated the Commerce and Equal Protection Clauses. The United States Court of Appeals for the Second Circuit held that the issue was ripe for review because a criminal law need not be violated to make a challenge ripe, because the plaintiffs had expended considerable money in pursuant of their license from the state, and because judicial review of the local law's validity would help the plaintiffs determine whether to spend more money in pursuit of a license. See Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock, 93 F.3d at 72.

Similarly, in Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind., the plaintiff wished to open a landfill but found itself thwarted by the county's new ordinance. Indiana had a two-tiered system for regulating landfills, involving both the state and the county. The plaintiff had an option to buy the land on which it wanted to site the landfill and had taken steps to ensure its suitability, but had not yet sought a county permit before challenging the county's ordinance. See 977 F.2d at 289. The United States Court of Appeals for the Seventh Circuit found

-19-

the issue ripe for review, primarily because the challenge was a facial challenge involving only legal questions and because the county conceded that the ordinance effectively prevented the plaintiff from using its chosen site as a landfill, in which it had invested substantial money.  The Seventh Circuit said: "This investment demonstrates that [the plaintiff] has a direct, tangible, and not merely a hypothetical interest in the subject matter of this litigation, for the ordinance will effectively and definitely prohibit [the plaintiff] from following through with its current plans even if it obtains a state permit."  Id. (citation omitted).  Even though the plaintiff had not obtained a state permit, the issue was not premature, because, "[g]iven the virtually preclusive effect of the ordinance at the county level, there would be no point in requiring [the plaintiff] to engage in a state permitting process -- a process that the County itself admits is 'withering and expensive,' -- as a prerequisite to filing suit."  Id. at 290 (citation omitted).  The Seventh Circuit also noted, regarding the importance of the challenge being a facial challenge: "Were this a regulatory takings case, [the plaintiff] most likely could not have brought suit until the appropriate administrative body, here the County, rendered a final decision on its application."  Id. at 289.

In ANR Pipeline Co. v. Corporation Comm'n of State of Okl., 860 F.2d 1571, 1579 (10th Cir. 1988), the Tenth Circuit held that pipeline operators had standing to challenge an Oklahoma law regulating natural gas because the operators purchased natural gas in Oklahoma and were also subject to the federal law they contended compliance would require them to violate.  The plaintiffs had standing because the regulations would "increase the price of natural gas, impair contractual obligations, and disrupt utilization of pipeline facilities."  Id. at 1579.  The Tenth Circuit also held that the companies did not need to "await the imposition of penalties under an unconstitutional enactment in order to assert their constitutional claim for an injunction in federal court."  Id. at 1578.

In Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252

-20-

(1977), the plaintiff was a non-profit builder of low- and moderate-income housing.  The plaintiff obtained a lease on land to build low-income housing, accompanied by a contract to buy the land contingent on rezoning and federal assistance, and began work on the project.  See id. at 256-57. The plaintiff's rezoning request was denied and it, along with others, sued, alleging racial discrimination.  See id. at 257-59.  The Supreme Court found the plaintiff had standing because the denial of rezoning "stands as an absolute barrier to constructing the housing [the plaintiff] had contracted to" build.  Id. at 261.  The Supreme Court rejected the notion that the plaintiff had not suffered an economic injury, because it had spent thousands of dollars on plans and studies that would be worthless without rezoning and because, as a non-profit, the plaintiff's interest was in seeing the housing built, regardless whether it would turn a profit.  See id. at 262-63.

**3.      Prudential Standing.**

"Prudential standing is not jurisdictional in the same sense as Article III standing." Finstuen v. Crutcher, 496 F.3d 1139, 1147 (10th Cir. 2007).   Prudential standing consists of "a judicially-created set of principles that, like constitutional standing, places limits on the class of persons who may invoke the courts' decisional and remedial powers."  Board of County Comm'rs of Sweetwater County v. Geringer, 297 F.3d 1108, 1112 (10th Cir. 2002)(internal quotation marks omitted).  Generally, there are three prudential-standing requirements: (i) "a plaintiff must assert his own rights, rather than those belonging to third parties"; (ii) "the plaintiff's claim must not be a generalized grievance shared in substantially equal measure by all or a large class of citizens"; and (iii) "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit."  Id. (internal quotation marks omitted).

Most relevant here is the rule that a "'plaintiff generally must assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" <u>Aid for Women v. Foulston</u>, 441 F.3d 1101, 1111 (10th Cir. 2006)(quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 499(1975)).  There is an exception to this general rule, however, known as third-party standing or jus tertii.  Third-party standing is allowed when: (i) "the party asserting the right has a close relationship with the person who possesses the right"; and (ii) "there is a hindrance to the possessor's ability to protect his own interests." <u>Aid for Women v. Foulston</u>, 441 F.3d at 1111-12.

A subset of the general prohibition against asserting the rights of others is the shareholder-standing rule.  "The rule is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." <u>Franchise Tax Bd. of California v. Alcan Aluminium Ltd.</u>, 493 U.S. 331, 336 (1990).  "This prudential prohibition on shareholder standing has a well-established exception, allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." <u>Grubbs v. Bailes</u>, 445 F.3d 1275, 1280 (10th Cir. 2006)(internal quotation marks omitted)(emphasis removed).  This exception applies "where the actions of the third party that injure the corporation also cause injury to the shareholder which is unique to himself or herself as a shareholder of the corporation and not suffered by the other shareholders." <u>Guides, Ltd. v. Yarmouth Group Property Management, Inc.</u>, 295 F.3d 1065, 1072 (10th Cir. 2002).  The shareholder-standing rule applies even to companies that have only a single owner. <u>See</u> <u>Pagan v. Calderon</u>, 448 F.3d 16, 28 (1st Cir. 2006)(noting that rule applies even where there is only one shareholder).

### LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS
### <u>AND RECOMMENDATIONS</u>

District courts may refer dispositive motions to a magistrate judge for a recommended disposition. <u>See</u> Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . ."). Rule 72(b)(2) governs objections: "Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Finally, when resolving objections to a magistrate judge's proposal: "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" <u>United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Oklahoma</u>, 73 F.3d 1057, 1059 (10th Cir. 1996)("<u>One Parcel</u>")(quoting <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985)). As the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency." <u>One Parcel</u>, 73 F.3d at 1059. In <u>One Parcel</u>, the Tenth Circuit, like many other courts of appeals, expanded the waiver rule, which precludes appellate review of any issues not timely raised in objections to a magistrate's report, to cover objections that are timely but too general. The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for

appellate review." Id. at 1060.

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" Id. (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)(brackets added by One Parcel). Moreover, the Supreme Court -- in the course of approving the use of the waiver rule -- has noted that, in the district court, even a failure to object at all "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." Thomas v. Arn, 474 U.S. at 154. In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de-novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other circuits where district court elected to address merits despite potential application of waiver rule, but circuit court opted to enforce waiver rule).

In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit specifically noted that it was proper for a district court to deem waived issues to which there is no objection. See Pevehouse v. Scibana, 229 Fed.Appx. 795, 796 (10th Cir. 2007)(noting that "the district court correctly held that he had waived this argument by failing to raise it before the magistrate").

## ANALYSIS

The ultimate question before the Court is whether the Plaintiffs have standing to sue the City

of Santa Fe.  The complex procedural posture and equally complex legal issues involved, however, require the resolution of many preliminary issues.  The Court first turns to what it should consider in light of the proceedings that followed the issuance of the Magistrate Judge's report.  The Court will consider all of the legal issues the Plaintiffs have raised in the aftermath of the report.  The Court will also consider the new evidence that was not before Judge Torgerson, although that evidence ultimately does not change the Court's analysis.  Like Judge Torgerson, the Court also concludes that the properties Dennis Branch lists in his first affidavit are not relevant to the standing inquiry here.  Thus, the Court is effectively considering only those factual allegations in the Complaint.  These factual allegations, however, do not demonstrate that the Plaintiffs have suffered any injuries in fact on their federal claims against the City of Santa Fe.  They therefore lack standing under Article III, and the Court will dismiss their federal claims.  Because there is no basis on which to exercise supplemental jurisdiction over the remaining state claims against the City, the Court will dismiss, without prejudice, all claims against the City of Santa Fe.

I.     **THE COURT WILL ALLOW THE PLAINTIFFS TO PRESENT NEW ARGUMENTS AND EVIDENCE.**

The first step to resolving this motion, especially given its somewhat complex procedural posture, is determining the scope of what the Court is reviewing.  In their objections to Judge Torgerson's recommendations, the Plaintiffs raise a number of new cases not presented to Judge Torgerson and also, via their Motion to Supplement, seek to introduce new evidence that was not before Judge Torgerson.  The City of Santa Fe views these new issues as a belated attempt to bring up matters that should have been put before Judge Torgerson and argues that the Plaintiffs have waived the right to present any new evidence or issues.  The City also contends that the Plaintiffs' objections are too general to meet the specificity requirements imposed on objections to a magistrate

judge's report.

The Court believes that the Plaintiffs have properly raised new matters and that judicial economy favors considering the Plaintiffs' arguments on the merits, rather than considering them defaulted on procedural grounds.  The new evidence that the Plaintiffs wish to submit, however, would not change the result of the Court's standing analysis.  The Court will grant the Motion to Supplement, however, in the interest of considering all the relevant material on standing and because the City of Santa Fe suffers no prejudice from the Court's considering the new evidence, given that it does not alter the Court's ruling.

### A.   THE COURT WILL NOT DEEM THE PLAINTIFFS TO HAVE WAIVED ANY ARGUMENTS.

Ensuring that the assigned magistrate has all the evidence and legal authority before him when he issues a recommendation is important to the judicial-efficiency policy underlying the use of referrals to magistrates.  This policy is also furthered by specific objections to a magistrate's report, to allow the district judge to zero in on the real issues.  The City of Santa Fe contends that the Plaintiffs have discussed a host of new cases never cited to Judge Torgerson and have failed to make their objections with the necessary particularity, but the Court believes that the Plaintiffs have largely complied with the governing procedures.  To the extent that they have not made the arguments before the Magistrate Judge, the Court nonetheless believes that judicial economy warrants a full review because a dismissal without prejudice on easily curable technical grounds would serve only to require some other judge to review the same issues down the line when the Plaintiffs re-filed.

First, it is not clear that the legal issues that the Plaintiffs raise are being advanced for the first time in their objections.  The Plaintiffs certainly discuss cases never cited before Judge

Torgerson and they admit as much.  See Objections at 1 n.1 ("The Plaintiffs previously filed a response to the City of Santa Fe's Motion to Dismiss and the authorities cited therein are for the most part not repeated herein.").  They also perhaps refine their theory about why they have standing.  The main issues at the heart of the motion, however, such as the Plaintiffs' argument that they have standing as developers rather than property owners, were presented earlier.  Determining what issues are truly new and what were presented to Judge Torgerson could entangle the Court in rather fine hair-splitting.  Because the use of referrals to magistrates is supposed to serve "judicial efficiency," One Parcel, 73 F.3d at 1059, the system of referral and objection should reduce the issues in dispute, not multiply them.

Aside from its disagreement with the Motion to Supplement, which the Court will address, the City of Santa Fe apparently contests only the Plaintiffs' reliance on new cases.  The City has not otherwise identified any new legal theories that it believes the Plaintiffs have waived, other than to raise a general challenge to the last eight pages of the Plaintiffs' objections.  Given that the basic seed of the Plaintiffs' arguments is found in their initial response, the Court does not believe that they should be forestalled from honing their theories and discussing new cases, particularly where the challenge to the novelty of the objections is a generalized one.

Second, the Court does not believe that the Plaintiffs' objections lack the necessary specificity.  True, the Plaintiffs could have done a more thorough job of tying their arguments to particular paragraphs of Judge Torgerson's opinion.  The Plaintiffs, however, have presented extensive argument in support of their position, even if they have not tethered each argument to a particular piece of analysis in the recommendations.  While the Plaintiffs have also made a number of specific objections to paragraphs without discussing the basis for those objections, the Court believes that, combined with the arguments made, the Court has adequate information to rule.  The

Plaintiffs have done more than merely present a list of objectionable paragraphs devoid of any argument or make a blanket objection to the entire report without discussing why.  The Court will, however, consistent with the purpose of the referral process, focus its analysis on the issues that the Plaintiffs raise in their objections.

Third, even if the Plaintiffs' objections fall within the scope of waiver for either presenting new issues or for failing to object with particularity, the Court would exercise its discretion to conduct a relatively de novo review.  Rule 72 contemplates a district judge's ability to exercise considerable control over handling objections.  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  As the Supreme Court has noted, even a failure to object at all "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard."  Thomas v. Arn, 474 U.S. at 154.  See One Parcel, 73 F.3d at 1060-61 (noting that district court exercised de novo review and citing cases from other circuits where district court elected to address merits despite potential application of waiver rule).  In this case, the interests of judicial economy lead the Court to believe that a full review would be preferred.  Dismissal in this case would be without prejudice, on jurisdictional grounds.  Dismissal for procedural noncompliance here would not prevent the Plaintiffs from refiling this suit and raising everything they are trying to raise before the Court.  Not considering all the arguments the Plaintiffs make here would only delay the ultimate resolution of this dispute and leave the matter to be decided somewhere down the line by some other judge.  Thus, even if the Court could enforce the waiver rule here, it would decline to do so.

**B.** **THE COURT WILL GRANT THE MOTION TO SUPPLEMENT, BUT THE ADDITIONAL EVIDENCE OFFERED WILL NOT PROVIDE THE PLAINTIFFS WITH STANDING.**

The Plaintiffs move to supplement the record with evidence regarding three separate properties. Two of these properties Dennis Branch acquired after this action was initiated and may thus not be considered for determining jurisdiction, which must exist as of the time of suit. The third property was acquired pre-lawsuit, but is the property of a limited liability company and not Dennis Branch personally. Because Dennis Branch does not personally own the property, he lacks prudential standing. The doctrine of third-party standing and particularly the shareholder-standing rule preclude Dennis Branch's reliance on that property to show standing. Accordingly, whether the Court granted or denied the motion would not change the outcome here. The issue is ultimately a matter of semantics, but the Court will grant the motion because the additional evidence would not prejudice the City.

Allowing in evidence regarding property Dennis Branch acquired after this lawsuit began would be futile. "'Standing is determined as of the time the action is brought.'" <u>Smith v. U.S. Court of Appeals, for the Tenth Circuit</u>, 484 F.3d at 1285 (quoting <u>Nova Health Sys. v. Gandy</u>, 416 F.3d at 1154). Because Dennis Branch did not own these new properties when this suit was initiated, <u>see</u> Warranty Deeds, the Plaintiffs cannot rely on them to establish standing. While <u>Nova Health Sys. v. Gandy</u> allowed the use of post-filing evidence, it was for the purpose of demonstrating that standing existed at the time of filing and to show that an allegedly imminent injury was in fact coming to pass. <u>See</u> 416 F.3d at 1154. Here, the Plaintiffs' use for the evidence of the new properties would not be as circumstantial evidence about their standing at the time of filing, but as the actual basis for standing. That use of the evidence is contrary to the established law.

The Terra Vista Subdivision presents a more complicated question. The City of Santa Fe

-29-

argues that this property cannot support standing because Dennis Branch owns it through a controlled entity and so any harm would fall on the entity, which, based upon the representations of counsel, is a limited liability company.  The Plaintiffs counter that such harm would effect Dennis Branch's potential profits.  Neither side has presented the Court with any case law bearing on the subject.

There are several relevant provisions in the New Mexico Statutes, although no cases of which the Court is aware interpreting them.[5]  N.M.S.A. 1978 § 53-19-14 provides:

> A member of a limited liability company is not a proper party to a proceeding by or against the limited liability company solely by reason of being a member of the limited liability company, except where the object of the proceeding is to enforce a member's right against or liability to the limited liability company.

Because this case does not concern Dennis Branch's rights or liabilities vis-a-vis the company, this provision indicates that Dennis Branch cannot stand in for the company.  More importantly, "[p]roperty transferred to or otherwise acquired by a limited liability company is property of the limited liability company and <u>not</u> of the members. A member has <u>no interest</u> in an item of limited liability company property." <u>Id.</u> § 53-19-29A (emphasis added).  This statute, particularly read in conjunction with § 53-19-14, indicates that the company, not Dennis Branch, should be the party asserting any claims involving the Terra Vista Subdivision.

The lone provision of the Limited Liability Company Act that might support the Plaintiffs' position, at least superficially, is § 53-19-58A, which provides in relevant part:

> Except as otherwise provided in the articles of organization or an operating agreement, a suit on behalf of the limited liability company may be brought in the name of the limited liability company by:

---

[5] The Court assumes that the limited liability company was formed under New Mexico law.

> A. any member of the limited liability company who is authorized to sue by the affirmative vote of members having a majority of the voting power of all members whose interests are not adverse to the interests of the limited liability company, whether or not the articles of organization or an operating agreement vests management of the limited liability company in one or more managers . . . .

As the title of this section and a close reading of the language make clear, however, the section concerns "[a]uthority to sue on behalf of [a] limited liability company." Id. The provision describes who is authorized to bring suit in the corporate name. In other words, this section spells out who can make a decision that a limited liability company is gong to file a lawsuit.

Accordingly, under New Mexico law, the Terra Vista Subdivision is the property of the company and not Dennis Branch's property. The Plaintiffs contend that an injury to the company, however, will effectively injure Dennis Branch. Even assuming this argument does not essentially make an end-run around New Mexico law, it is a very tenuous thread. The Plaintiffs are asserting that harm to what is legally the property of a third-party will cause Dennis Branch harm. That may be the case, but many things happen to people which thereby indirectly harm others. "'[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Aid for Women v. Foulston, 441 F.3d at 1111 (quoting Warth v. Seldin, 422 U.S. at 499). The Plaintiffs appear to be asserting the doctrine of third-party standing, which allows a plaintiff to assert another's rights when: (i) "the party asserting the right has a close relationship with the person who possesses the right"; and (ii) "there is a hindrance to the possessor's ability to protect his own interests." Aid for Women v. Foulston, 441 F.3d at 1111-12. The first condition is likely met here, but nothing prevents the limited-liability company from bringing suit on its own.

Another outgrowth of the prudential-standing requirement that parties assert their own rights is the shareholder-standing rule. "The rule is a longstanding equitable restriction that generally

prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." Franchise Tax Bd. of California v. Alcan Aluminium Ltd., 493 U.S. at 336. "This prudential prohibition on shareholder standing has a well-established exception, allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." Grubbs v. Bailes, 445 F.3d at 1280 (internal quotation marks omitted)(emphasis removed). This exception applies "where the actions of the third party that injure the corporation also cause injury to the shareholder which is unique to himself or herself as a shareholder of the corporation and not suffered by the other shareholders." Guides, Ltd. v. Yarmouth Group Property Management, Inc., 295 F.3d at 1072 (emphasis added). Although there are apparently no other owners here, if there were, they would suffer an identical injury to the injury that Dennis Branch asserts. See Pagan v. Calderon, 448 F.3d at 28 (noting that shareholder standing rule applies even where there is only one shareholder). Here, the Terra Vista Subdivision is the sole property of the company, and any harm that Dennis Branch would suffer would be as a result of the company's loss of profitability, i.e., the harm would flow solely from his ownership interests in the company. Economic harm solely based on loss of profits is squarely within the shareholder-standing rule. See Rawoof v. Texor Petroleum Co., Inc., 521 F.3d 750, 757 (7th Cir. 2008)(holding that shareholder standing rule barred sole shareholder from bringing suit over his corporation's loss of a franchise); Pagan v. Calderon, 448 F.3d at 28-29 (holding that shareholders did not have standing to sue for harms resulting in depreciation of stock value).

Additionally, the affidavit's statements about the Terra Vista Subdivision suffer from another flaw. While Dennis Branch states that the subdivision is subject to the City Ordinance, he does not state that he is trying to develop the subdivision, that he has undertaken plans that the Ordinance is

frustrating, or otherwise alleged with any particularity what injury is occurring.  He only states that he owns the property through a controlled entity, while in his Complaint he generally alleges that the City Ordinance interferes with development, but nowhere does he tie the two together or provide detail about the particular project he has planned, the steps he has taken, and how the City Ordinance stands as an obstacle in his intended path.  As discussed in Section II, a failure to show such details is a failure to establish standing.

## II.    THE PLAINTIFFS HAVE FAILED TO SHOW THAT THEY HAVE CONSTITUTIONAL STANDING.

There is no dispute about the general standard to be applied here.  The Plaintiffs must show: "(1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision."  Protocols, LLC v. Leavitt, 549 F.3d at 1298 (internal quotation marks omitted).  The first prong is the main issue here.  Because the Plaintiffs have not shown an injury in fact, the Court will not proceed to the second and third prongs of the standing inquiry.

Although the Court has already defined the scope of what evidence and arguments from after Judge Torgerson's report it will consider, there are other threshold issues that also must be addressed.  None of the parties have discussed this issue, but this is a rule 12(b)(1) motion in which both sides have submitted affidavits.  Initially, the City of Santa Fe's motion appeared to be a facial attack on the sufficiency of the Complaint, but with affidavits now in play, the motion to dismiss has arguably made its way to a challenge to the factual basis of jurisdiction.  Because "a court's reference to evidence outside the pleadings does not convert [a rule 12(b)(1) motion] to a Rule 56 motion," the Court may nonetheless continue to treat this as a rule 12(b)(1) motion.  Holt v. United

States, 46 F.3d at 1003.  Normally, "a district court may not presume the truthfulness of the complaint's factual allegations" when dealing with the second class of rule 12(b)(1) motions.  Holt v. United States, 46 F.3d at 1003.  Here, however, there does not seem to be any genuine dispute about the underlying facts -- whether presented in the affidavits or in the Complaint.  The parties have some dispute about what all the relevant facts are and about the interpretation of many facts, but not about the existence of the facts themselves.  The Court will therefore largely proceed as if the Complaint's allegations are true.

Another threshold issue the Court must address is whether the evidence in Dennis Branch's first affidavit is relevant.  The Court concludes that it is not.  Turning to the merits, neither the case law the Plaintiffs cited before Judge Torgerson's report, nor the case law they cite after that report present scenarios similar to the one here.  The Plaintiffs have not adequately shown an injury in fact and therefore do not have standing under Article III.

### A.    THE RELEVANT FACTS FOR DETERMINING WHETHER STANDING EXISTS.

It is important to identify the facts the Court will consider when determining whether the Plaintiffs can establish jurisdiction.  The Complaint contains two relevant, general allegations: (i) that "[t]he Plaintiffs are engaged in various professions, businesses and transactions that involve or are dependent upon the development and sale or rent of residential properties in the City and County of Santa Fe," Complaint ¶ 6, at 2; and (ii) that the Branch Plaintiffs are involved in residential developments in the City of Santa Fe that "are being impacted by" the City Ordinance, Complaint ¶ 7, at 2.  Dennis Branch's first affidavit also explains that he has been active in development in the City of Santa Fe, but that he believes the City Ordinance is hurting his business and livelihood because it is reducing the profitability of development projects.  See Branch Aff. ¶¶ 2, 3, 4 & 6, at

1-3.  Dennis Branch's second affidavit is not at issue at this point, because although the Court has granted the Motion to Supplement, the new evidence will not provide standing.

Dennis Branch's first affidavit lists several specific properties with which he has been involved and which affordable-housing ordinances have affected.  McCormick's affidavit, however, reveals that those affected projects were actually subject to the older HOP Ordinance and not to the newer City Ordinance that is being challenged here.  See McCormick Aff. ¶¶ 6-8, at 2-3.  The Plaintiffs have not disputed that fact.  Accordingly, the Court does not view these particular properties as being relevant here, other than as support for Dennis Branch's assertion that he is an active developer in the Santa Fe area and as circumstantial evidence that, as a general matter, affordable-housing laws can impact the behavior and decisions of developers.

At the hearing, Mr. VanAmberg argued that these properties were technically subject to the City Ordinance.  Mr. VanAmberg conceded, however, that Dennis Branch would only need to deal with the City Ordinance if he lost his current permits or something similar occurred, and also conceded that nothing in the record indicated that Dennis Branch would be re-approaching the City of Santa Fe and subjecting these properties to the new Ordinance.  See Tr. at 6:6-7:10 (Court & VanAmberg).  Because standing is considered with harms that are "actual or imminent," and not with hypothetical harms, the properties mentioned in the first affidavit remain irrelevant to standing here.  Protocols, LLC v. Leavitt, 549 F.3d at 1298 (internal quotation marks omitted).

In sum, the Court must consider whether the Plaintiffs, as a whole, have standing based upon being "engaged in various professions, businesses and transactions that involve or are dependent upon the development and sale or rent of residential properties."  Complaint ¶ 6, at 2.  Additionally, the Court must consider the situation of the Branch Plaintiffs, who allege they are involved in residential developments in the City of Santa Fe that "are being impacted by" the City Ordinance,

Complaint ¶ 7, at 2, and Dennis Branch's similar statements in his first affidavit.

**B.    THE ARGUMENTS THAT THE PLAINTIFFS ORIGINALLY ADVANCED DO NOT SUPPORT STANDING HERE.**

The Court will concentrate on the Plaintiffs' arguments in opposition to Judge Torgerson's proposed disposition.  There are a couple of points emphasized in the Plaintiffs' initial briefing, however, that warrant attention.  First is the Plaintiffs' argument, relying primarily on Initiative and Referendum Institute v. Walker, that they need not actually sustain the injury the City Ordinance threatens to have standing.  Second is the cases the Plaintiffs originally put forward as supporting a finding of standing.

As the City of Santa Fe and Judge Torgerson both point out, Initiative and Referendum Institute v. Walker is a First Amendment case.  The rules for standing in First Amendment cases are effectively different because of the nature of the right to free speech -- what, in other circumstances, might not be viewed as an injury, can be an invasion of First Amendment rights.  The Tenth Circuit "has recognized that a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact, as long as it arises from an objectively justified fear of real consequences."  450 F.3d at 1088.  A chilling effect being an injury is thus a facet of the unique nature of the First Amendment right to freedom of speech, not an aspect more generally of what constitutes an injury in fact in the mine-run of situations.  It is not that the plaintiff in a First Amendment case has not suffered an actual injury; rather, the chilling effect itself is an injury in the First Amendment context.

Although the Plaintiffs objected to Judge Torgerson's rejection of their reliance on Initiative and Referendum Institute v. Walker, they have presented no case law finding standing because of a chilling effect outside of the free-speech framework.  They have presented nothing to refute the

-36-

proposition that "[a]n injury in fact does not automatically occur by '[t]he mere presence on the statute books of an unconstitutional statute . . . , even if [plaintiffs] allege an inhibiting effect on constitutionally protected conduct prohibited by the statute.'" Doctor John's, Inc. v. City of Roy, 465 F.3d 1150, 1155-56 (10th Cir. 2006)(quoting Winsness v. Yocom, 433 F.3d 727, 732 (10th Cir. 2006)).  Indeed, the Tenth Circuit recently noted that a plaintiff had "not cited any authority applying [the relaxed] First Amendment standing analysis in similar circumstances" and "decline[d] to take that step." Smith v. U.S. Court of Appeals, for the Tenth Circuit, 484 F.3d at 1285.

The closest the Plaintiffs come to explaining why they might not need to suffer a real injury is in their objections is their analogy to Skull Valley Band of Goshute Indians v. Nielson and the landfill cases that decision discusses.  The Tenth Circuit approvingly quoted the Seventh Circuit:

> [P]ostponing judicial action . . . would force an unwarranted dilemma upon [the applicant]: either scuttle its development plans altogether in deference to a potentially invalid county regulation, or complete the expensive and time-consuming state permit process, submit a permit application that [the county] is almost certain to reject, and then, after incurring substantial sunk costs, bring a facial challenge to the ordinance.

Id. at 1285 (quoting Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind., 977 F.2d at 291, 289, and 290)(alterations added by Skull Valley Band of Goshute Indians v. Nielson). Unlike here, however, the prospect of injury in both Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind. and Skull Valley Band of Goshute Indians v. Nielson was likely if the plaintiffs continued and the regulations being challenged were interfering with actual, existing, specific projects.  The plaintiffs in those cases did not have just an inchoate desire to engage in a particular activity; they had taken concrete steps to bring particular plans to fruition, only to encounter legal obstacles.

The other cases that the Plaintiffs cite in their initial briefing also present scenarios different

-37-

from the one before the Court.  Day v. Bond concerned an equal-protection challenge that non-resident students at Kansas colleges brought to a state statute that effectively allowed some undocumented aliens to pay lower, resident tuition rates than out-of-state students.  The Tenth Circuit found that two of the plaintiffs' theories alleged injury in fact, but all the plaintiffs were tuition-paying students and the theories that were found to involve injury in fact concerned extra tuition payments and unequal treatment of the students because of an absolute legal barrier making it impossible for the non-resident American citizen students to obtain benefits.  See id. at 1131, 1132-33 & 1133 n.4.  In Colorado Environmental Coalition v. Wenker, the plaintiffs challenged the procedures the Secretary of the Interior employed in making appointments to Resource Advisory Councils in Colorado.  The plaintiffs did not have a "right" to be appointed, but the plaintiffs had all applied for positions and been denied appointments.  See id. at 1226, 1236.  In re Special Grand Jury 89-2 concerned whether grand jurors had standing to request a court to lift the obligation of grand-jury secrecy so they could talk about grand jury proceedings.  The Tenth Circuit held that the grand jurors had a legally cognizable interest in challenging what was effectively a restriction on their speech and therefore had standing.  See id. at 1172-74.

The common thread connecting the cases the Plaintiffs cite is that they all involve people who were actively involved in some specific activity or were actually subject to a legal duty, and not who were only relying on past activities or a desire to engage in future activities.  The grand jurors had an active secrecy obligation imposed on them, whereas the Plaintiffs have not yet incurred any affirmative obligations under the City Ordinance.  The position-seekers in Colorado Environmental Coalition v. Wenker had applied for and been denied spots on the resource councils, whereas the Plaintiffs have not yet involved themselves in the regulatory process under the City Ordinance.  The students in Day v. Bond were paying allegedly disproportionate tuition, whereas

the Plaintiffs are not yet paying or giving away anything.  The cases the Plaintiffs cite do not support finding standing here.

### C.     THE PLAINTIFFS' ARGUMENTS IN THEIR OBJECTIONS DO NOT SALVAGE STANDING.

The Plaintiffs' main problem with the report seems to be that they believe Judge Torgerson interprets the causes of action they assert too narrowly.  The Plaintiffs then proceed to canvas the extensive Supreme Court jurisprudence on takings, asserting that their claims are largely claims under Nollan v. California Coastal Comm'n  and Dolan v. City of Tigard for placing a burden on developers that is unrelated to the developers' activities.  "Essentially," the Plaintiffs maintain, Judge Torgerson's recommendation requires that "they must now buy a piece of property for hundreds of thousands of dollars . . . simply to achieve standing to challenge an Ordinance which has already in large part put them out of business." Objections at 15.

The Court need not decide whether the Plaintiffs must actually own property to have standing to challenge the City Ordinance.[6]  Even if the Court accepts that the Plaintiffs are properly alleging an unconstitutional-burdens theory that does not require property ownership, the general allegations that the Plaintiffs make are insufficient to confer standing.  They need not sink hundreds of thousands of dollars into a potentially unviable project, but, as a comparison with the cases the Plaintiffs cite in support of standing shows, they must be able to identify some particular, concrete

---

[6] The City of Santa Fe's argument that property ownership is required has merit.  Without actual ownership of something, it is far from clear what property is being taken from the Plaintiffs or what rights of owners to develop are being denied due process or equal protection.  Again, the Court is not deciding the issue here, but the Plaintiffs' contentions come close to being a claim for the right to buy property or a claim for a right to engage in a particular profession, a theory not asserted in the Complaint.  Additionally, the City and Judge Torgerson's focus on property ownership is hardly surprisingly given the Complaint's frequent mention of the rights of "property owners" and the burdens placed on "property owners."  E.g., Complaint ¶¶ 11, 13, 15, 17, 27, 33, 43 & 48, at 2-7, 9.

activity in which they were or are engaged that the City Ordinance is affecting.

The Plaintiffs must show an injury that is "both concrete and particularized as well as actual or imminent." Protocols, LLC v. Leavitt, 549 F.3d at 1298 (internal quotation marks omitted). Without pointing to any particular activity that is being impeded, other than alleging generally that the City Ordinance is hurting developers, the Plaintiffs cannot meet this requirement. All the theories the Plaintiffs advance involve the Ordinance's impact on development, but the Plaintiffs do not identify any development projects in which they have a stake that are being harmed. The amorphous harm the Plaintiffs assert is neither concrete and particularized, nor actual or imminent.

The Plaintiffs rely heavily on several cases involving licensing procedures. While the Court does not agree with the City of Santa Fe's somewhat absolutist argument that these cases are inapposite because they do not involve takings, the cases are nonetheless distinguishable. In the cases cited, the plaintiffs all had definite, concrete interests being harmed, unlike the Plaintiffs here have shown.

In Skull Valley Band of Goshute Indians v. Nielson, the Tenth Circuit held that the plaintiffs had standing because of the substantial burden the State of Utah's separate licensing scheme for spent nuclear-fuel disposal placed on the plaintiffs. See 376 F.3d at 1234-35. The plaintiffs, however, were actively engaged in procuring a federal licence from the Nuclear Regulatory Commission. See id. at 1228. The Plaintiffs here have not shown that the City Ordinance burdens their ongoing activities. They argue that the City Ordinance deters them from engaging in development projects, but have not shown that there is any particular project or projects that they have abandoned because of the City Ordinance or that they are pursuing, and which will cost them financially if they are required to comply with the City Ordinance. Unlike the Skull Valley Band of Goshute Indians v. Nielson plaintiffs, they are asserting only a general complaint about the effects

of the City Ordinance, without being able to point to any concrete, definite project that the City Ordinance has hindered or prevented.

The landfill cases Skull Valley Band of Goshute Indians v. Nielson and the Plaintiffs cite also do not aid the Plaintiffs' case.  In Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock, the plaintiffs both owned the land on which they sought to build a landfill on and also had spent significant sums seeking a license from the State of New York.  See 93 F.3d at 70.  The town ordinance banning landfills that the plaintiffs challenged had the direct effect of making their proposed landfill impossible, despite their substantial investment in the project.  See id. at 70-71. Although the issue was ripeness, not standing, the Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock plaintiffs had shown a developed interest in a concrete project in which they had invested heavily, which the challenged ordinance threatened.  See id. at 72.  Again, the Plaintiffs here have not shown such an interest.  It is not clear in Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind. whether the plaintiff had applied for a state permit, although it had not sought a county permit.  The plaintiff had, however, an option contract to buy land and had invested in its landfill project.  Once again, the plaintiff had an "investment demonstrat[ing] that [the plaintiff] ha[d] a direct, tangible, and not merely a hypothetical interest in the subject matter of" the litigation.  977 F.2d at 289.

The other cases on standing that the Plaintiffs discuss in their objections also all involve scenarios where the plaintiffs had definite, identifiable interests that the challenged laws impacted. In ANR Pipeline Co. v. Corporation Comm'n of State of Okl., for example, the plaintiffs operated pipelines and bought natural gas from Oklahoma, where Oklahoma had passed a new law that would "increase the price of natural gas, impair contractual obligations, and disrupt utilization of pipeline facilities."  860 F.2d at 1579.  Similarly, in Village of Arlington Heights v. Metropolitan Housing

Development Corp., the plaintiff had a lease, a conditional contract to purchase, and had spent thousands of dollars on studies and plans, all involving a particular low-income housing project that could not be built once rezoning was denied.  See 429 U.S. at 262-63.

What all of these cases share is that the plaintiffs were challenging regulations or laws that significantly interfered with or effectively prevented particular, identifiable projects in which the plaintiffs were investing.  This important feature is absent in this case.  The Plaintiffs have not put forward any facts identifying particular projects they wish to pursue and showing that the City Ordinance is impacting their ability to proceed with those projects.

This requirement is not a difficult one to meet.  If the Plaintiffs had identified a particular project they were interested in pursuing, taken some affirmative steps towards realizing that project so that they had a definite stake in a project that the City Ordinance would effect, and then shown that the Ordinance was an impediment to or burden on the proposed project, the Plaintiffs would almost certainly have met the requirements for standing.  It would take some effort, some money, but hardly the hundreds of thousands of dollars wasted on buying a large tract of land to subdivide that the Plaintiffs are worried they must do to show standing.  Despite these relatively minimal hurdles to showing standing, and despite twice having had the opportunity to shore up the deficiencies in their Complaint, the Plaintiffs have, in the end, continued to rely on their general allegations that the City Ordinance is making life hard for developers.  The Plaintiffs have failed to show they have suffered or are in imminent danger of suffering an injury in fact, and therefore they do not have standing to challenge the City Ordinance.  Because the Court concludes that none of the Plaintiffs have Article III standing, the Court need decide whether prudential standing exists.  See Habecker v. Town of Estes Park, Colo., 518 F.3d at 1224 n.7 ("Because we conclude that Habecker lacks constitutional standing, we need not consider the issue of prudential standing.").

-42-

**III.    THE COURT WILL DISMISS ALL CLAIMS THE PLAINTIFFS RAISE AGAINST THE CITY OF SANTA FE.**

The Court's analysis of the Plaintiffs' lack of standing, like the arguments the Plaintiffs raise, is not addressed solely to the takings claim.  That the Plaintiffs have failed to show any particularized, concrete injury holds true of the due-process and equal-protection claims as well. Furthermore, the other federal count in the Complaint, Count IV, is a prayer for relief and an invocation of 42 U.S.C. § 1983 to provide the cause of action for the alleged constitutional violations.  Count IV is not a separate theory and falls with the other federal claims.  Accordingly, the Court will dismiss the federal claims the Plaintiffs attempt to bring against the City of Santa Fe for lack of standing.

The Plaintiffs have also asserted two claims under state law.  Possibly the standing analysis for these claims is different.  The Court need not decide that issue, however, because without subject-matter jurisdiction over any federal claims, the Court is unable to exercise supplemental jurisdiction over the state claims in the absence of diversity of citizenship.  See 1mage Software, Inc. v. Reynolds and Reynolds Co., 459 F.3d 1044, 1049 n.6 (10th Cir. 2006)(noting that district courts must have subject matter jurisdiction over at least some claim before being able to exercise supplemental jurisdiction over other claims).  The citizenship of the Plaintiffs is not clear from the Complaint, although it is likely that many, if not all, the Plaintiffs are non-diverse from the Defendants.  Regardless, the Plaintiffs have sought to invoke the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343, which cover general federal question jurisdiction and jurisdiction over civil rights actions respectively.  See Complaint ¶ 5, at 1.  Additionally, the Court is dismissing the federal claims against the County of Santa Fe for lack of subject-matter jurisdiction in a memorandum opinion and order that will be issued concurrently with this opinion.  Even assuming

that the state claims against the City of Santa Fe are "so related" to the claims against the County "that they form part of the same case or controversy under Article III of the United States Constitution,"  28 U.S.C. § 1367(a), the Court cannot use those federal claims as a basis for supplemental jurisdiction, because they are also being dismissed on jurisdictional grounds.  The Court will therefore dismiss the entirety of the case against the City of Santa Fe for want of jurisdiction.  Because the reason for the dismissal is a failure to establish facts that would confer standing on the Plaintiffs, the Court will follow Judge Torgerson's suggestion and dismiss the claims without prejudice.

**IT IS ORDERED** that: (i) the Motion to Supplement the Record is granted; (ii) the Plaintiffs' Opposition to Magistrate Judge's Proposed Findings and Recommended Decisions is overruled; and (iii) Defendant City of Santa Fe's Motion to Dismiss for Lack of Standing is granted. The Court will dismiss all claims the Plaintiffs have brought against Defendant City of Santa Fe without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Ronald J. VanAmberg
VanAmberg Rogers Yepa & Abeita, LLP
Santa Fe, New Mexico

    *Attorneys for the Plaintiff*s

Karl H. Sommer
Karl H. Sommer & Associates PA
Santa Fe, New Mexico

    *Attorneys for the Prospective Intervenor-Plaintiff Santa Fe*
      *Area Home Builders Association, Inc.*

Frank D. Katz
Santa Fe City Attorney's Office
Santa Fe, New Mexico

-- and --

Donna M. Connolly
John C. Bienvenu
Rothstein Donatelli Hughes Dahlstrom
  Schoenburg & Bienvenu LLP
Santa Fe, New Mexico

     *Attorneys for Defendant City of Santa Fe*

Stephen C. Ross
Santa Fe County Attorney's Office
Santa Fe, New Mexico

 -- and --

Mark A. Basham
Basham & Basham,  P.C.
Santa Fe, New Mexico

-- and --

Robyn B. Hoffman
French & Associates, P.C.
Albuquerque, New Mexico

-- and --

Robert H. Freilich
Miller Barondess, LLP
Los Angeles, California

     *Attorneys for Defendant County of Santa Fe*