IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALTO ELDORADO PARTNERS,
RANCHO VERANO, LLC, CIMARRON
VILLAGE LLC, DENNIS R. BRANCH
AND JOANN W. BRANCH,

        Plaintiffs,

vs.                                                                          No. CIV 08-0175 JB/ACT

THE CITY OF SANTA FE and
THE COUNTY OF SANTA FE,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant County of Santa Fe's Motion to

Dismiss Plaintiffs' Complaint and Memorandum in Support, filed May 19, 2008 (Doc. 31). The

Court held a hearing on January 8, 2009. The primary issues are: (i) whether the Plaintiffs' takings

claim is ripe for adjudication; (ii) whether their other federal claims are subsumed under their

takings claim and must be premature if the takings claim is premature; and (iii) whether the Court

should dismiss the pendent state law claims. Because the Court concludes that the Plaintiffs' takings

claim is premature and that the Plaintiffs' other constitutional claims are subsumed under the claim,

the Court will dismiss the Plaintiffs' federal claims on jurisdictional grounds. Because the Court

thus lacks a basis on which to exercise supplemental jurisdiction, the Court will also dismiss the

remaining state claims for lack of subject-matter jurisdiction.

## FACTUAL BACKGROUND

        This case concerns challenges under both the United States and New Mexico Constitutions,

as well as New Mexico state law, to the County Ordinance and to the City of Santa Fe's similar

affordable housing ordinance (the "City Ordinance"), the latter of which the Court has dismissed because the Plaintiffs lack standing to challenge the City Ordinance under the United States Constitution.  See Memorandum Opinion and Order at 44, entered March 11, 2009 (Doc. 79).  The Plaintiffs are developers active in the City and County of Santa Fe.  They contend that the City and County Ordinances are legally invalid on a variety of theories.  In essence, however, their claims are that the Ordinances deprive developers of their property by forcing them to set aside significant portions of their developments for affordable housing, at a loss to the developers.

The Court will focus here on the facts relevant to the County Ordinance.  Because this is a motion to dismiss, the Court will assume that the Plaintiffs' factual allegations are true, although the Court notes that a number of the allegations in the Complaint are essentially assertions of law or mixed questions of law and fact that the Court does not assume are true.

Three of the Plaintiffs, Alto Eldorado Partners, Ranch Verano, LLC, and Cimarron Village, LLC, (collectively, "County Plaintiffs"), "own parcels of land in Santa Fe County which have master plan approval and these Plaintiffs intended to proceed with the development of their properties but are being impacted by the" County Ordinance.  Complaint for Injunctive Relief for Violation of Civil Rights and New Mexico State Law ¶ 7, at 2, filed February 15, 2008 (Doc. 1)("Complaint").  The bulk of the Complaint discusses the City Ordinance, and then notes that the County Ordinance is similar and describes what the Plaintiffs view as the key differences between the two Ordinances.  The Court will therefore lay out most of the allegations involving the City Ordinance, but refer to the County and to the County Ordinance.

The County Ordinance requires that upwards of thirty percent of the lots in a subdivided development be affordable housing lots to be sold to qualified buyers.  These set-aside lots must be sold at below market value.  See Complaint ¶ 12, at 2-3.  This scheme effectively requires property

owners not only to dedicate some of their property to others, but requires property owners to become home builders.  See Complaint ¶ 23, at 3.[1]

In lieu of providing affordable housing, owners may, at the County of Santa Fe's discretion, pay money to the County.  See id. ¶ 13, at 3.  The Plaintiffs acknowledge that the County Ordinance allows for density bonuses -- which permit an owner to add more lots or units -- and fee waivers, but state that the waivers defray only some of the losses owners suffer.  See Complaint ¶ 15, at 3. The density bonuses are a more complicated story.  While allowing for more lots, decreased lot sizes may depreciate the overall value of a subdivision, push the subdivision into a category requiring more extensive infrastructure, or even not be given at all because of neighborhood opposition or other legal restrictions.  See id.

When affordable housing units are resold, the difference between the resale price and the original affordable housing price is split between the County of Santa Fe and the qualified buyer. See id. ¶ 16, at 4.  This provision effectively denies the original developer any profit after the developer builds the home at a personal loss.  See id. ¶ 17, at 4.  All funds the County receives under the Ordinance go into a trust fund that is to be used exclusively for affordable housing purposes. See Complaint ¶ 21, at 4.

To make projects viable, developers are forced to increase prices on the non-affordable housing lots -- or market lots -- to recover losses the County Ordinance forces on them, helping drive housing prices out of the reach of the middle class.  See Complaint ¶¶ 19-20, at 4. Additionally, the County Ordinance limits the amount of rent certain owners may charge for rental

---

[1] The paragraph after 12 is labeled 23.  Given that the Complaint also contains a paragraph 13 and a paragraph 23, the Court will retain the numbering in its citations, trusting in the page numbers to distinguish paragraphs.

units.  See Complaint ¶ 22, at 5.

One difference between the City and County Ordinances is that, for small projects, the County Ordinance requires that sixteen rather than thirty percent of the development be set aside for affordable housing, although the requirement is raised to thirty percent if a density bonus is sought for a smaller project.  See Complaint ¶ 23, at 5.  The County Ordinance also defines qualified buyers as a larger set of the population: "those who have incomes up to one hundred twenty-one percent (121%) of the ordinance-defined average median income and who may have up to $125,000 in assets."  Complaint ¶ 24, at 5.  The Plaintiffs state the County Ordinance is more burdensome than the City Ordinance, because minimum lot sizes in the County are larger -- ranging from two-and-a-half acres to twelve-and-a-half acres depending on the hydrologic properties of the zone in which the lot lies and whether a County-approved water system services the lot -- see Complaint ¶ 25, at 5, and also because road and infrastructure costs are greater for these larger lots, see id. ¶ 26, at 5.  If a development remains economically viable under the County Ordinance, the property owner will usually make payments in lieu of providing affordable housing.  See Complaint ¶ 27, at 5-6.  For a one-hundred lot subdivision, the fee is $4,960,000.00.  See id.

The Plaintiffs maintain that the County Ordinance amounts to an unconstitutional taking because the Ordinance lacks any reasonable nexus between the activity of developing property and the problem of providing affordable housing, because it places disproportionate burdens on owners, because it requires property owners to sell property at below-market rates, because it transfers resale profits to buyers or to the County, and because it may in some cases requires direct payment to the County.  See Complaint ¶¶ 30, 32-40, at 7-8.  Property owners are not compensated for these effects.  See id. ¶ 41, at 8.  The Plaintiffs also maintain that the County Ordinance singles out property owners wishing to develop or to subdivide property without any rational basis for doing so, and is

an arbitrary exaction.  See Complaint ¶¶ 43-46, 48-50, at 9-10.  The Plaintiffs further assert that the County Ordinance effectively taxes property owners without any legal authority and without being uniformly applied in a rational manner.  See Complaint ¶¶ 58-62, at 11.  Finally, the Plaintiffs acknowledge that the County Ordinance does not specifically impose rent controls, but maintain that administrative interpretations of the Ordinance require rent controls in violation of N.M.S.A. 1978 § 47-8A-1.  See Complaint ¶¶ 65-67, at 12.

## PROCEDURAL BACKGROUND

The Plaintiffs filed this lawsuit challenging both the City and County Ordinances.  Their Complaint raises six counts: (i) unconstitutional taking of property under the Fifth Amendment; (ii) equal protection; (iii) substantive due process; (iv) injunctive relief under 42 U.S.C. § 1983 and attorneys' fees under § 1988; (v) taxation without authorization and in violation of article VII of the New Mexico Constitution; and (vi) illegal rent control in violation of N.M.S.A. 1978 § 47-8A-1. The Plaintiffs request that the Court declare the City and County Ordinances invalid, enjoin the Defendants from enforcing their respective ordinances, and grant the Plaintiffs their costs and attorneys' fees.  The Court has dismissed the lawsuit against the City of Santa Fe for lack of standing to bring the federal claims.

The County of Santa Fe moves the Court to dismiss the case against it under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  The County raises two main grounds for dismissal of the Fifth-Amendment takings claim: (i) that the claim is not ripe because the Plaintiffs have not sought and been denied just compensation in an inverse-condemnation proceeding in state court; and (ii) that the Plaintiffs' facial challenge fails because of the County Ordinance's waiver provision.  Additionally, the County seems to argue that a facial challenge under the Takings Clause must involve either a claim that the regulation fails to substantially advance a legitimate government

interest, or a claim that the regulation denies a property owner all economically viable use of his or her property.  The County notes that the former theory is no longer viable in the wake of <u>Lingle v. Chevron, U.S.A., Inc.</u>, 524 U.S. 528 (2005), while there are no allegations about the latter theory in the Complaint.  <u>See</u> Motion at 4.  The County further argues that the other federal claims in this case are subsumed under the more specific takings claim and therefore fall with the takings claim.  Finally, the County maintains that the Court should dismiss the state claims once there are no federal claims left in the case.

The County argues that the Plaintiffs' takings claim must satisfy the two-part ripeness test announced in <u>Williamson County Regional Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172 (1985)("<u>Williamson</u>").  The County concedes that a facial challenge bypasses the first prong, but contends that a facial challenge must nonetheless meet the second prong, which requires that a plaintiff first seek compensation through state channels before turning to federal court.  <u>See</u> Motion at 5.  Because New Mexico provides inverse-condemnation proceedings in state court, the County maintains that the Plaintiffs' claims are not ripe because they have failed to avail themselves of those proceedings.  <u>See</u> <u>id.</u> at 5-6.

Next, the County argues that the Plaintiffs face an imposing task in raising a facial challenge: the Plaintiffs, it asserts, must show that the County Ordinance would not allow for the County to avoid unconstitutional applications.  In other words, the Ordinance must be unconstitutional in all its possible applications.  The County notes that its Ordinance contains a waiver provision for hardship.  This provision, the County contends, prevents the Ordinance from being facially invalid. <u>See</u> Motion at 6-7.

The County then turns to the other federal claims.  The due-process and equal-protection claims, it argues, must "'follow the takings claim out of the courthouse door.'"  <u>Id.</u> at 7 (quoting

Landmark Land Co. of Okla., Inc. v. Buchanan, 874 F.2d 717, 722 (10th Cir. 1989), abrogated on other grounds by Federal Lands Legal Consortium v. United States, 195 F.3d 1190 (10th Cir. 1999)). The County also maintains that, without any viable federal claims, its request for attorney's fees pursuant to 42 U.S.C. § 1988 automatically fails. See Motion at 8. Finally, the County urges the Court to dismiss the state claims because pendent claims should be dismissed when all federal claims have been dismissed before trial. See id. at 8-9.

The Plaintiffs disagree. They first argue that, because they are not seeking monetary compensation, but making a facial challenge to the constitutionality of the County Ordinance, they need not first pursue relief in state court. See Plaintiffs' Response to Defendant County of Santa Fe's Motion to Dismiss Plaintiffs' Complaint and Memorandum in Support at 3-4, filed June 13, 2008 (Doc. 38)("Response"). They contend that the cases the County cites are inapposite and that the Supreme Court of the United States has allowed facial-takings challenges without plaintiffs being first denied a remedy in state court. See id. at 4-11.

The Plaintiffs next argue that the County Ordinance's waiver provision suffers from a number of flaws that render it incapable of shielding the Ordinance from facial attack. First, they contend that hardship waivers are conditioned on an owner being deprived of all economically viable use of his or her property. The Plaintiffs maintain that, because there are several ways that a taking can occur without a complete deprivation of economic viability, the waiver is not applicable to certain situations that constitute a taking. See Response at 12-13. Second, the Plaintiffs contend that the waiver provision allows for standardless discretion, which they maintain makes the provision void and unable to save the Ordinance. See Response at 13-15. Third, the Plaintiffs argue that the waiver creates an impossible-to-meet standard, because no applicant for a waiver could ever show that the Ordinance deprived them of all economic use of his or her property. See Response

at 15-17.  The Plaintiffs conclude by asserting that under the County's theory the Plaintiffs' due-process and equal-protection claims are tied to the takings claim and thus, with the takings claim stating a cause of action, the other claims should as well.  See id. at 17.

In response, the County criticizes the Plaintiffs for failing "to defend a single one of [their] causes of action," and for failing to affirmatively argue about validity of their non-takings claims, although the County fails to explain why the Plaintiffs should address arguments the County did not raise in its motion.  Reply in Support of Defendant County of Santa Fe's Motion to Dismiss Plaintiffs' Complaint [Doc. 31] at 1, filed July 29, 2008 (Doc. 56)("Reply")(brackets in original). The County then turns to addressing the different ways in which a takings claim may be raised.  The County first argues that the Plaintiffs have not stated a valid cause of action for a physical taking, see id. at 2-3, or for an economic-deprivation taking, see id. at 3-4.  The County then contends that exaction claims under Nollan v. California Coastal Commission, 483 U.S. 825 (1987), and Dolan v. City of Tigard, 512 U.S. 374 (1994), cannot be facial challenges and reiterates its position that the ability of the County to waive requirements is fatal to any facial challenge.  See Reply at 4-6. The County then returns to its ripeness argument and asserts that the Plaintiffs must first seek relief in state court even for facial challenges.  See id. at 7-8.

The County next argues that Lingle v. Chevron USA, Inc., has eliminated the possibility of injunctive or declaratory relief in takings claims that are premised on the challenged law's failure to substantially advance a legitimate state interest, relegating such claims to substantive due process. See Reply at 8.  The County then, for the first time, directly addresses the Plaintiffs' due-process and equal-protection claims, while noting that "we will review the viability of Plaintiffs' facial substantive due process claim even though they do not discuss it in their Response."  Reply at 9.

On the substantive due-process claim, the County argues that its Ordinance is rationally

related to the governmental interest in affordable housing.  <u>See</u> Reply at 9-10.  The County further

contends that they cannot show a protectable property interest because of the discretion inherent in

the land-use approval process, and that the County's failure to apply for a waiver or a variance

makes their claims not ripe for review.  <u>See id.</u> at 10-12.  As to the equal-protection claim, the

County argues that the claim is not ripe, that the County has failed to allege facts showing "that they

are similarly situated to others who have received disparate favorable treatment," and that the

County Ordinance passes the rational-basis test.  <u>See</u> Reply at 12.

At the hearing, Robert H. Freilich, the County's attorney, argued that the County Ordinance

was modeled after ordinances from several states that had survived facial challenges.  <u>See</u> Transcript

of Hearing at 51:5-10 (taken January 8, 2009)(Freilich)("Tr.").[2]  Mr. Freilich contended that the

Plaintiffs claims were not ripe or were invalid because, although they sought injunctive and

declaratory relief, that relief was available only for laws that failed to advance a government interest,

which he asserted that the Plaintiffs could not show.  <u>See id.</u> at 66:23-68:5.

Ronald J. VanAmberg, the Plaintiffs' counsel, stated that he had a problem with the

procedural posture of many of the County's arguments, which he contended were only raised in their

Reply and during oral argument.  <u>See</u> Tr. at 82:5-83:8 (Van Amberg).  Mr. VanAmberg agreed that

all the Plaintiffs' federal claims were asserting facial challenges.  <u>See</u> Tr. at 88:24-89:7 (Court &

VanAmberg).

## LAW REGARDING RIPENESS IN FACIAL-TAKINGS CHALLENGES

Ripeness is one aspect of Article III's requirement that federal courts hear only genuine cases

or controversies.  Because the Takings Clause does not categorically forbid the government from

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

taking property for public use, but only from taking property without just compensation, a unique ripeness doctrine has developed for takings cases.  Generally, a plaintiff asserting a taking must first receive a final decision from the relevant state agency and also use state-provided avenues of relief to seek just compensation before a taking can be said to occur.  A facial challenge to a law, however, may not implicate these requirements. It is undisputed that the first ripeness requirement, often known as the finality requirement, does not apply to facial challenges.  The law is murkier, however, when the issue becomes whether a facial challenge is exempt from the second ripeness requirement. There is some guidance in this area from the Supreme Court of the United States, but little relevant law from the United States Court of Appeals for the Tenth Circuit.[3]  Casting the net more widely reveals that at least five circuits have issued opinions more or less on point, but that the circuits are split on whether a facial challenge to a law may proceed in federal court absent a plaintiff's pursuit of just compensation at the state level.

1.      **Supreme Court Cases**.

The unique nature of the Takings Clause has led to special ripeness doctrines that apply to claims that a person's property has been taken without just compensation.  The leading Supreme Court case in this area is Williamson.  The genesis of the test laid out in Williamson, however, lies in earlier case law.

---

[3] The most attention the Tenth Circuit has had cause to give to the issue is noting in an unpublished opinion that "the Supreme Court has distinguished certain facial challenges from other takings claims and has indicated they may not require resort to state procedures."  Santa Fe Ranchlands v. Santa Fe County, 46 F.3d 1152, at *2 (10th Cir. 1995)(table)(unpublished opinion). The Tenth Circuit did not address the issue, however, because it found that the plaintiffs' raising the facial challenge argument was "disingenuous," because their complaint was plainly not asserting a facial challenge.  Id. at *3.  The Tenth Circuit has used Williamson in discussing as-applied challenges, see, e.g., B. Willis, C.P.A., Inc. v. BNSF Ry. Corp., 531 F.3d 1282, 1299 (10th Cir. 2008), but none of the parties have cited and the Court is not aware of any case Tenth Circuit discussing Williamson in the context of a facial challenge.

What would later become the <u>Williamson</u> ripeness test began to take shape in cases such as <u>Agins v. City of Tiburon</u>, 447 U.S. 255, 260 (1980), <u>abrogated in part</u> by <u>Lingle v. Chevron U.S.A., Inc.</u>, 544 U.S. 528 (2005).  In <u>Agins v. City of Tiburon</u>, the Supreme Court held, in an opinion authored by Justice Powell, that, because the plaintiffs had "not submitted a plan for development of their property as the ordinances permit, there is as yet no concrete controversy regarding the application of the specific zoning provisions."  447 U.S. at  260.  The Supreme Court stated that therefore "the only question properly before us is whether the mere enactment of the zoning ordinances constitutes a taking."  <u>Id.</u>

The Supreme Court's first significant discussion of ripeness under the Takings Clause was in <u>Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.</u>, 452 U.S. 264 (1981).  The case was brought in federal court, challenging several provisions of the federal Surface Mining Control and Reclamation Act of 1977.  <u>See</u> <u>Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.</u>, 452 U.S. at 268, 273.  One of the issues raised was a facial challenge under the Just Compensation Clause, which the Supreme Court addressed on the merits.  The Supreme Court, in an opinion by Justice Marshall, stated that, because the challenge was a facial one, the issue was limited to "whether the 'mere enactment' of the Surface Mining Act constitutes a taking."  <u>Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.</u>, 452 U.S. at 295 (quoting <u>Agins v. City of Tiburon</u>, 447 at 260).  The Supreme Court held that the plaintiffs could not "legitimately raise complaints . . . about the manner in which the challenged provisions of the Act have been or will be applied in specific circumstances, or about their effect on particular coal mining operations."  <u>Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.</u>, 452 U.S. at 297.  Additionally, the plaintiffs had not "availed themselves of the opportunities provided by the Act to obtain administrative relief by requesting either a variance" or a waiver, and this "potential for such administrative solutions

confirm[ed] the conclusion that the taking issue . . . simply [wa]s not ripe for judicial resolution." 452 U.S. at 97.

Williamson built on the principles that the Supreme Court articulated in Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc. and announced a two-part test for determining ripeness in most takings claims. Williamson concerned a lawsuit filed in federal court to challenge the constitutionality of a county commission's rejection of the plaintiff's proposed plat for the development of a project called the Temple Hills Country Club Estates. See 473 U.S. at 177-182. The Supreme Court held, in an opinion by Justice Blackmun, that, because the plaintiff had "not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation, [its] claim [wa]s not ripe." Id. at 186.

On the first point, the Supreme Court in Williamson noted that the plaintiff had not sought approval of a variance and therefore "not yet obtained a final decision regarding how it will be allowed to develop its property." Id. at 190. The Supreme Court stated that the relevant "factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." Id. at 191. While recognizing its similarity to an exhaustion requirement, which 42 U.S.C. § 1983 does not contain, the Supreme Court held that the "the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury" and thus differs from an exhaustion requirement, which involves exhaustion of proceedings aimed at remedying an adverse decision. Williamson, 473 U.S. at 193.

On the second point, the Supreme Court in Williamson noted that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."

Williamson, 473 U.S. at 194.  "Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." Williamson, 473 U.S. at 194 (internal quotation marks omitted).  Accordingly, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson, 473 U.S. at 195.

Several years after Williamson, the Supreme Court first addressed whether a facial challenge under the Takings Clause had to satisfy the Williamson test.  The petitioners in Yee v. City of Escondido, 503 U.S. 519 (1992), were challenging a rent-control ordinance, but had not sought a rent increase.  See 503 U.S. at 533.  The Supreme Court, in an opinion by Justice O'Connor, stated that "a claim that the ordinance effects a regulatory taking *as applied* to petitioners' property would be unripe" because they had not sought a rent increase, id. at 533-34 (emphasis in original)(citing Williamson, 473 U.S. at 186-97), but that the petitioners were "mount[ing] a *facial* challenge to the ordinance," Yee v. City of Escondido, 503 U.S. at 534 (emphasis in original).  The Supreme Court noted that the petitioners were alleging "that the ordinance does not substantially advance a legitimate state interest no matter how it is applied."  Id. (internal quotation marks omitted).  "As this allegation does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated," the Supreme Court held that the "facial challenge [wa]s ripe."  Id.

In 1997, the Supreme Court again mentioned the ripeness requirements for facial challenges under the Takings Clause.  The Supreme Court discussed the finality requirement for an as-applied regulatory-taking claim, but also noted that "'facial' challenges to regulation are generally ripe the

-13-

moment the challenged regulation or ordinance is passed, but face an 'uphill battle.'" Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 736 n.10 (1997)(Souter, J.)(quoting Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470, 497 (1985)).

Recently, however, the Supreme Court decided a case that may call into question the extent to which facial challenges evade the Williamson requirements.  In Lingle v. Chevron U.S.A. Inc., the Supreme Court held, in an opinion by Justice O'Connor, that whether a law "substantially advance[s] a legitimate state interest," id. at 540, was not "a valid method of identifying regulatory takings for which the Fifth Amendment requires just compensation," Lingle v. Chevron U.S.A. Inc., 544 U.S. at 545.  It is this now-discarded theory that Yee v. City of Escondido discussed when holding that a facial challenge under the Takings Clause need not satisfy Williamson.  See Yee v. City of Escondido, 503 U.S. at 534.

The Supreme Court's opinion in San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. 323 (2005), by Justice Stevens, includes the Supreme Court's most recent mentioning of facial-takings challenges.  San Remo Hotel, L.P. v. City and County of San Francisco principally concerned whether plaintiffs who litigated takings claims in state court, pursuant to the ripeness requirement Williamson imposes, were exempt from the normal operation of issue-preclusion rules when they later reached federal court.  Despite this focus, the Supreme Court, while noting that Lingle v. Chevron U.S.A. Inc. eliminated their primary cause of action, stated that the petitioners "were never required to ripen the heart of their complaint -- the claim that the [challenged regulation] was facially invalid because it failed to substantially advance a legitimate state interest -- in state court." Id. at 345.  The Supreme Court, also, however, may have recognized a limited scope for facial challenges being exempt: "Petitioners' facial challenges . . .were ripe, of course, under Yee v. Escondido, in which we held that facial challenges based on the 'substantially advances' test need

-14-

not be ripened in state court -- the claims do 'not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated.'" San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. at 340 n. 23 (quoting Yee v. Escondido, 503 U.S. at 534)(citation omitted)(emphasis added). The Supreme Court did not address whether the elimination of the substantially advances theory still allowed other facial challenges to avoid the Williamson ripeness test.

2.      **Courts Allowing Immediate Facial Challenges in Federal Court.**

Some circuit courts have either directly held or else noted that facial challenges under the Takings Clause are exempt from meeting the Williamson ripeness requirements.  The United States Court of Appeals for the First Circuit, the United States Court of Appeals for the Fourth Circuit, and the United States Court of Appeals for the Seventh Circuit have all come to this conclusion. Arguably, some cases from the United States Court of Appeals for the Ninth Circuit have similar holdings, but a careful reading of these case reveals that the Ninth Circuit exempts only particular kinds of facial challenges from Williamson.

The First Circuit has held that a plaintiff raising a facial challenge need not first seek just compensation from the state.  In one recent case, the First Circuit held that, "to the extent that the [plaintiff] is making a facial statutory challenge, its takings claim need not be brought first to a Commonwealth body, either administrative or judicial." Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 14 (1st Cir. 2007).  In support of this proposition, the First Circuit cited the broad language from Suitum v. Tahoe Regional Planning Agency and Yee v. City of Escondido, as well as two circuit cases, Quicken Loans, Inc. v. Wood, 449 F.3d 944 (9th Cir. 2006), and Pharm. Care Mgmt. Ass'n v. Rowe, 429 F.3d 294 (1st

Cir. 2005).  Pharm. Care Mgmt. Ass'n v. Rowe in turn merely mentions in passing that facial challenges are "usually ripe 'the moment the challenged regulation or ordinance is passed.'"  Id. at 307 (quoting Suitum v. Tahoe Regional Planning Agency, 520 U.S. at 736 n.10).

The Fourth Circuit has reached a similar conclusion.  In Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 493 F.3d 404, 407 (4th Cir. 2007), the Fourth Circuit discussed the Williamson ripeness test in the context of an as-applied regulatory taking and noted: "We recognize, of course, that the state procedures requirement does not apply to facial challenges to the validity of a state regulation."  Id. at 407 (citing San Remo Hotel, L.P. v. City and County of San Francisco and  Lingle v. Chevron U.S.A., Inc.).  The Fourth Circuit also, however, seems to distinguish regulatory takings from challenges to a law's validity under the Takings Clause.  The Fourth Circuit noted that, "given that South Carolina opens its courts to inverse condemnation claims arising from regulatory takings," a plaintiff bringing a regulatory-taking claim must satisfy both parts of Williamson.  Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 493 F.3d at 407.

In the Seventh Circuit, there are several cases indicating that Williamson is inapplicable to facial claims.  In Peters v. Village of Clifton, 498 F.3d 727 (7th Cir. 2007), decided after Lingle v. Chevron U.S.A., Inc., the Seventh Circuit did not directly address ripeness in facial challenges, but noted, as part of a general review of ripeness and takings claims, that "the Supreme Court has held that many facial challenges to legislative action authorizing a taking can be litigated immediately in federal court."  Peters v. Village of Clifton, 498 F.3d at 732 (citing San Remo Hotel, L.P. v. City and County of San Francisco and Yee v. City of Escondido).  Earlier, the Seventh Circuit similarly noted: "Litigants are not required to meet the *Williamson County* ripeness requirements when solely mounting a pre-enforcement facial challenge to the constitutionality of a statute under the Fifth

Amendment." Daniels v. Area Plan Comm'n of Allen County, 306 F.3d 445, 458 n. 13 (7th Cir. 2002). Daniels v. Area Plan Comm'n of Allen County relied on what is apparently the first Seventh Circuit case to discuss ripeness in facial claims, Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind., 977 F.2d 287 (1992). In Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind., the Seventh Circuit discussed Williamson and the importance of "a final decision," because "takings cases are fact-intensive, and require a careful examination of the challenged decision's economic impact." Id. at 289. The Seventh Circuit noted that the lawsuit at issue, however, was a facial attack presenting a purely legal issue, because "the case revolve[d] exclusively around the question of whether the ordinance is a 'zoning ordinance' under Indiana law." Id. The Seventh Circuit held that the issue was therefore ripe, albeit without specifically addressing the just-compensation prong of Williamson.

Quicken Loans, Inc. v. Wood is a Ninth Circuit case that the First Circuit cited in support of facial challenges being exempt from Williamson. Quicken Loans, Inc. v. Wood itself quickly disposed of the question whether a facial-takings challenge, premised on the theory that certain statutes did "not substantially advance legitimate state interests," was ripe. 449 F.3d at 953. Quicken Loans, Inc. v. Wood, however, relies exclusively on San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095 (9th Cir. 1998). This earlier case expressly noted that "a facial takings claim alleging the denial of the economically viable use of one's property is unripe until the owner has sought, and been denied, just compensation by the state," id. at 1101, while for the specific theory that a statute does not substantially advance legitimate state interests, "the denial of just compensation is irrelevant for purposes of ripeness," id. at 1102. This distinction between varieties of facial challenges arises from the Ninth Circuit's decision in Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401 (9th Cir. 1996). Sinclair Oil Corp. v. County of Santa Barbara read

-17-

_Yee v. City of Escondido_'s exemption of facial challenges from _Williamson_ to apply only to challenges based on the claim that a law did not "substantially advance legitimate state interests." _Sinclair Oil Corp. v. County of Santa Barbara_, 96 F.3d at 406.  Following _Yee v. City of Escondido_, the Ninth Circuit noted that such a theory "'does not depend on the extent to which [landowners] are deprived of the economic use of their . . . property or the extent to which [they] . . . are compensated.'"  _Sinclair Oil Corp. v. County of Santa Barbara_, 96 F.3d at 406 (quoting _Yee v. City of Escondido_, 503 U.S. at 534)(alterations and omissions in _Sinclair Oil Corp. v. County of Santa Barbara_).  "In contrast, the extent to which a landowner has been compensated is relevant when he maintains that a regulation has denied him the economically viable use of his land." _Sinclair Oil Corp. v. County of Santa Barbara_, 96 F.3d at 406-07.  The Ninth Circuit thus held that this second variety of facial challenge remained subject to _Williamson_'s mandate that a plaintiff first attempt to obtain just compensation from the state.

### 3.    Courts Not Allowing Immediate Facial Challenges in Federal Court.

Standing opposed to the conclusions reached in the First, Fourth, and Seventh Circuits are cases from the United States Court of Appeals for the Third Circuit and the Ninth Circuit.  Both circuits have concluded that a facial challenge to a law based on the Takings Clause is not ripe without a plaintiff first seeking just compensation.  As noted above, however, the Ninth Circuit recognizes a discrete exception for claims premised on a law not substantially advancing legitimate state interests.  This distinction is of negligible importance today given the Supreme Court's elimination of such a theory under the Takings Clause in _Lingle v. Chevron, U.S.A., Inc._

_County Concrete Corp. v. Town of Roxbury_, 442 F.3d 159 (3d Cir. 2006), concerned a facial challenge to an ordinance.  The Third Circuit held that _Williamson_'s finality rule did not apply to a facial challenge.  See _County Concrete Corp. v. Town of Roxbury_, 442 F.3d at 164-65.  Relying

on Sinclair Oil Corp. v. County of Santa Barbara, the Third Circuit reached a different result regarding the application of Williamson's requirement that a plaintiff exhaust state provisions for just compensation. The Third Circuit held that, while the plaintiffs' facial challenge "may save them from the finality rule, it does not relieve them from the duty to seek just compensation from the state before claiming that their right to just compensation under the Fifth Amendment has been violated." County Concrete Corp. v. Town of Roxbury, 442 F.3d at 168.

The Ninth Circuit has the most extensive body of case law discussing ripeness and facial challenges under the Takings Clause. The Ninth Circuit's most recent case on the subject, Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d 1184 (9th Cir. 2008), involved both facial and as-applied challenges to a mobile-home rent control ordinance. See id. at 1189.[4] The Ninth Circuit noted that the first prong of Williamson "applies only to as-applied challenges." Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d at 1190 n.12 (citing Hacienda Valley Mobile v. Morgan Hill, 353 F.3d 651, 655 (9th Cir. 2003)("Facial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation.")). The second prong, however, "must be satisfied in order to bring either an as-applied or a facial challenge." Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d at 1190 n.13.

As the Plaintiffs point out, arguing that the procedure for just compensation must be part of the challenged law itself, the Ninth Circuit stated that the plaintiff had "not satisfied the second requirement of the *Williamson* test, because it has not attempted to obtain relief through the state

---

[4] The Plaintiffs cited an earlier opinion from this case in their briefing. That opinion, Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 505 F.3d 860 (9th Cir. 2007), was withdrawn and replaced with the opinion that the Court cites.

procedure <u>designed to provide compensation for rent control losses</u>." <u>Id.</u> at 1190 (emphasis added). The Ninth Circuit noted that, "[i]n a 1997 decision, the California Supreme Court established a procedure by which a party injured by a government taking could seek compensation." <u>Id.</u> at 1190-91 (citing <u>Kavanau v. Santa Monica Rent Control Bd.</u>, 941 P.2d 851 (1997)). Because the plaintiff had not availed itself of this "*Kavanau* adjustment" process before filing suit in federal court, the plaintiff's <u>as-applied</u> claims were unripe. <u>Equity Lifestyle Props., Inc. v. County of San Luis Obispo</u>, 548 F.3d at 1192. On the other hand, the Ninth Circuit found the plaintiff's facial challenge to be ripe because a facial challenge is considered as of the time of enactment of the challenged ordinance. In 1984, when the ordinance at issue came into effect, "California had no damages remedy for regulatory takings." <u>Id.</u> at 1193. "Because no adequate state remedy was available in 1984, when the ordinance was enacted," the Ninth Circuit held that the plaintiff "need not fulfill the second prong of *Williamson* in order for its facial challenge to be ripe." <u>Id.</u>

Similarly, in <u>Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura</u>, 371 F.3d 1046 (9th Cir. 2004), the Ninth Circuit held: "Whether it is construed as a facial or as-applied takings claim, the [plaintiff] still must satisfy the second ripeness requirement [from <u>Williamson</u>] by showing it exhausted available state remedies for compensation." <u>Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura</u>, 371 F.3d at 1052. The Ninth Circuit stated that the plaintiff had not alleged that he had pursued various avenues of relief the challenged ordinance itself provided, but also more generally that the plaintiff had not "sought redress in state court" under California's compensation scheme. <u>Id.</u> at 1053.

As <u>Sinclair Oil Corp. v. County of Santa Barbara</u> acknowledges, the Ninth Circuit early case law on the facial takings claims was not entirely consistent. <u>See id.</u> at 406 (citing <u>Lake Nacimiento Ranch Co. v. San Luis Obispo County</u>, 841 F.2d 872 (9th Cir. 1987), in which the Ninth Circuit

ruled on the merits of a facial challenge despite no indication of an attempt to obtain just compensation).  At least since Sinclair Oil Corp. v. County of Santa Barbara, however, the Ninth Circuit has been requiring that plaintiffs asserting facial challenges -- unless the challenge was under the substantially advances theory -- first seek just compensation at the state or local level before coming to federal court with a takings claim.

### LAW REGARDING INJUNCTIVE AND DECLARATORY RELIEF FOR TAKINGS VIOLATIONS

The Supreme Court has also discussed whether equitable relief is available when there are procedures for a plaintiff to pursue just compensation, and whether the Takings Clause requires just compensation as a remedy or whether equitable relief is sufficient.  As to the former, the Supreme Court has indicated that the possibility of securing just compensation will foreclose equitable relief, but has not completely foreclosed allowing equitable relief even when just compensation is available.  As to the latter scenario, the Supreme Court has held that the Fifth Amendment mandates just compensation for violations of the Takings Clause, but has not addressed the related issue whether equitable relief is permissible given that the Takings Clause generally allows a government to take private property for public use so long as it pays just compensation.

1.     **Availability of Equitable Relief.**

In Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59 (1978), the Supreme Court considered the constitutionality of the Price-Anderson Act, which sets limits on the liability of private, federally licensed nuclear-power plants in the event of a nuclear accident. See 438 U.S. at 64-65, 67.  The Supreme Court held that the challenge to the statute was ripe. See id. at 81-82.  The case raised due process and takings claims, see id. at 69, but the Supreme Court did not address the takings claim because it did not read the Price-Anderson Act as

-21-

withdrawing a Tucker Act remedy and because the appellees "concede[d] that if the Tucker Act remedy would be available in the event of a nuclear disaster, then their constitutional challenge to the Price-Anderson Act under the Just Compensation Clause must fail."  <u>Duke Power Co. v. Carolina Environmental Study Group, Inc.</u>, 428 U.S. at 94 n.39.[5]  The Supreme Court, however, apparently considered that it had jurisdiction over the claim, noting in response to Justice Rehnquist's concurrence in the judgment, that the appellees were "not seeking compensation for a taking, a claim properly brought in the Court of Claims, but . . . requesting a declaratory judgment that since the Price-Anderson Act does not provide advance assurance of adequate compensation in the event of a taking, it is unconstitutional."  <u>Duke Power Co. v. Carolina Environmental Study Group, Inc.</u>, 428 U.S. at 71 n.15.  The Supreme Court stated: "While the Declaratory Judgment Act does not expand our jurisdiction, it expands the scope of available remedies. Here it allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained."  <u>Duke Power Co. v. Carolina Environmental Study Group, Inc.</u>, 428 U.S. at 71 n.15.  <u>Duke Power Co. v. Carolina Environmental Study Group, Inc.</u> was decided before <u>Williamson</u>, but its footnote on jurisdiction retains at least some force.

Under the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. §§

_____

[5] The Tucker Act, 28 U.S.C. § 1491, vests the United States Court of Federal Claims with "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." <u>Id.</u> § 1491(a)(1).  District courts have concurrent jurisdiction with the Court of Federal Claims under 28 U.S.C. § 1346(a)(2) for claims of $10,000.00 or less, but the Court of Federal Claims has exclusive jurisdiction over claims exceeding $10,000.00.  <u>See Normandy Apartments, Ltd. v. U.S. Dep't of Housing and Urban Development</u>, 554 F.3d 1290, 1296 (10th Cir. 2009).

9701-9722, various coal mining companies were required to transfer surplus amounts from existing benefits funds to a new fund providing health benefits for coal mine workers. Several cases involving the Takings Clause arose out of the litigation over the Coal Act, implicating Duke Power Co. v. Carolina Environmental Study Group, Inc. and the availability of equitable relief.

In re Chateaugay Corp., 53 F.3d 478 (2d Cir. 1995), involved a claim that the transfers the Coal Act required amounted to an unconstitutional taking without just compensation. The United States Court of Appeals for the Second Circuit addressed whether the challenge was ripe and noted that the Supreme Court has often required plaintiffs claiming a taking by the federal government to seek compensation under the Tucker Act, but had taken jurisdiction over several cases without reference to the Tucker Act. See In re Chateaugay Corp., 53 F.3d at 492-93 (citing Duke Power Co. v. Carolina Environmental Study Group, Inc., Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602 (1993), and Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211 (1986)).[6] The Second Circuit "resolve[d] this apparent inconsistency by looking not so much to what the Supreme Court has said, but to what it has done." In re Chateaugay Corp., 53 F.3d at 493. With this in mind, the Second Circuit "conclude[d] that a distinction must be drawn between (a) statutes burdening real and tangible property, and (b) those requiring direct transfers of money to the government." Id. Thus,

> where the challenged statute requires a person or entity to pay money to the government, it must be presumed that Congress had no intention of providing compensation for the deprivation through the Tucker Act. Common sense dictates

---

[6] In both Connolly v. Pension Ben. Guar. Corp. and Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, the Supreme Court ruled on the merits of takings claims involving withdrawal liability under Multi-Employer Pension Plan Amendments Act, 29 U.S.C. §§ 1381-1461. See Connolly v. Pension Ben. Guar. Corp., 475 U.S. at 221-28; Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. at 641-47.

such a presumption. . . . [The normal] presumption would tend to nullify all existing legislation adjusting the benefits and burdens of economic life: Every dollar paid pursuant to a statute would be presumed to generate a dollar of Tucker Act compensation. Instead, we hold that the *Williamson County/Preseault* presumption of Tucker Act availability must be reversed where the challenged statute, rather than burdening real or physical property, requires a direct transfer of funds to the government.

In re Chateaugay Corp., 53 F.3d at 493.

In another Coal Act case, the Seventh Circuit briefly noted that it agreed with In re Chateaugay Corp. and thus the issue before it was ripe for decision.  See Davon, Inc. v. Shalala, 75 F.3d 1114, 1127 n.11 (7th Cir. 1996).  Then, in 1998, the Coal Act reached the Supreme Court.  In Eastern Enterprises v. Apfel, a plurality of four justices adopted in large part the ripeness holding of In re Chateaugay Corp.  Confronting a takings claim under the Coal Act, the plurality noted that

a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute. *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016-1019, . . . (1984).  In this case, however, Eastern does not seek compensation from the Government. Instead, Eastern requests a declaratory judgment that the Coal Act violates the Constitution and a corresponding injunction against the Commissioner's enforcement of the Act as to Eastern.

Eastern Enterprises v. Apfel, 524 U.S. at 520.

The plurality went on:

On the one hand, this Court's precedent can be read to support the . . . conclusion that regardless of the nature of relief sought, the availability of a Tucker Act remedy renders premature any takings claim in federal district court. *See Preseault v. ICC*, 494 U.S. 1, 11, . . . (1990); *see also Monsanto*, supra, at 1016, 104 S.Ct., at 2879-2880. On the other hand, in a case such as this one, it cannot be said that monetary relief against the Government is an available remedy. . . . The payments mandated by the Coal Act, although calculated by a Government agency, are paid to the privately operated Combined Fund. Congress could not have contemplated that the Treasury would compensate coal operators for their liability under the Act, for "[e]very dollar paid pursuant to a statute would be presumed to generate a dollar of Tucker Act compensation." *In re Chateaugay Corp.*, 53 F.3d, at 493. Accordingly, the "presumption of Tucker Act availability must be reversed where the challenged statute, rather than burdening real or physical property, requires a direct transfer of

-24-

funds" mandated by the Government. *Ibid.* . . . . Instead, as we explained in *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 71, n. 15, . . . (1978), the Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained."

Moreover, in situations analogous to this case, we have assumed the lack of a compensatory remedy and have granted equitable relief for Takings Clause violations without discussing the applicability of the Tucker Act. *See, e.g., Babbitt v. Youpee*, 519 U.S. 234, 243-245, . . . (1997); *Hodel v. Irving*, 481 U.S. 704, 716-718, 107 S.Ct. 2076, 2083-2084, 95 L.Ed.2d 668 (1987). Without addressing the basis of this Court's jurisdiction, we have also upheld similar statutory schemes against Takings Clause challenges. *See Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 641-647, . . . (1993); *Connolly*, 475 U.S., at 221-228, . . . . "While we are not bound by previous exercises of jurisdiction in cases in which our power to act was not questioned but was passed sub silentio, neither should we disregard the implications of an exercise of judicial authority assumed to be proper" in previous cases. *Brown Shoe Co. v. United States*, 370 U.S. 294, 307 . . . (1962) (citations omitted). Based on the nature of the taking alleged in this case, we conclude that the declaratory judgment and injunction sought by petitioner constitute an appropriate remedy under the circumstances, and that it is within the district courts' power to award such equitable relief.

524 U.S. at 521-22.[7]

Justice Breyer's dissent, joined by three justices, also agreed that the Due Process Clause was

more appropriate, see 524 U.S. at 554 (Breyer, J., dissenting), effectively creating a five-vote bloc

for the Takings Clause not applying. While focused on the Due Process Clause, the dissent also

highlighted the problem of allowing injunctive relief under the Takings Clause: "[C]ould a court

apply the same kind of Takings Clause analysis when violation means the law's invalidation, rather

than simply the payment of 'compensation?'" Eastern Enterprises v. Apfel, 524 U.S. at 556 (citing

---

[7] Justice Kennedy's concurring vote created the majority as to the result in Eastern Enterprises v. Apfel. Justice Kennedy's concurrence did not address the ripeness issue and concurred in the result of the case only, finding that the claim should have been addressed under the Due Process Clause and not the Takings Clause.

First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. at 315 ("[The Takings Clause] is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking").

  **2.**    **Requirement of Just Compensation.**

  Agins v. City of Tiburon, 24 Cal.3d 266, 598 P.2d 25 (1979), and its progeny generated a series of Supreme Court cases that often ended in dismissal on jurisdictional grounds, but ultimately produced a decision that the Takings Clause required just compensation as a remedy.  Reasoning that ordering just compensation was tantamount to compelling a government to exercise its eminent domain powers and usurping the function of the political branches, the California Supreme Court in Agins v. City of Tiburon decided that a plaintiff could not obtain compensation for a regulatory taking, but only declaratory or mandamus relief, with the regulation being invalidated.  See id. at 274-77, 598 P.2d at 30-31.  On reviewing Agins v. City of Tiburon itself, the Supreme Court held that the challenged regulation was not a taking.  Three times after that the Supreme Court of the United States heard appeals involving the holding in Agins v. City of Tiburon or similar issues, but did not reach the merits of the issue: whether the Takings Clause required just compensation for the temporary taking that occurred up until the regulation's invalidation.  The Supreme Court ultimately held that just compensation is a constitutionally mandated remedy for a taking.  The long path the Supreme Court took in finally getting to that holding sheds some light on how takings violations can and must be remedied.

  San Diego Gas & Elec. Co. v. City of San Diego began the line of Supreme Court cases that would ultimately lead to First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.'s holding that the Takings Clause required compensation.  The Supreme Court found

-26-

that the issue was not ripe in <u>San Diego Gas & Elec. Co. v. City of San Diego</u>, however, because

a situation where a state court finds a taking and decides "that further proceedings are necessary to

determine the compensation that must be paid has been regarded as a classic example of a decision

not reviewable in this Court because it is not 'final.'" 450 U.S. at 632-33.  This result was because

"the federal constitutional question embraces not only a taking, but a taking on payment of just

compensation. A state judgment is not final unless it covers both aspects of that integral problem."

<u>Id.</u> at 633 (internal quotation marks omitted).  The Supreme Court found that it did not have

jurisdiction because of the reverse of the classic situation -- the lower court had found damages

inappropriate, but had not determined whether a taking had occurred.  <u>See id.</u>

Justice Brennan, in a lengthy dissent whose discussion of the merits would ultimately

triumph in <u>First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.</u>,

would have found the issue ripe.[8]  Justice Brennan considered "invalidation" insufficient and

proposed that,

> once a court finds a police power regulation has effected a "taking," the government
> entity must pay just compensation for the period commencing on the date the
> regulation first effected the "taking," and ending on the date the government entity
> chooses to rescind or otherwise amend the regulation. . . . Should the government
> decide immediately to revoke or otherwise amend the regulation, it would be liable
> for payment of compensation only for the interim during which the regulation
> effected a "taking." . . . Alternatively the government may choose formally to
> condemn the property, or otherwise to continue the offending regulation: in either
> case the action must be sustained by proper measures of just compensation. . . . The
> States should be free to experiment in the implementation of this rule, provided that
> their chosen procedures and remedies comport with the fundamental constitutional
> command. . . . The only constitutional requirement is that the landowner must be able
> meaningfully to challenge a regulation that allegedly effects a "taking," and recover

---

[8] Justice Rehnquist, whose vote would have created a majority, had "little difficulty in
agreeing with much of what [wa]s said in the dissenting opinion of Justice BRENNAN," but agreed
that the case was not ripe.  <u>San Diego Gas & Elec. Co. v. City of San Diego</u> at 633-34 (Rehnquist,
J., concurring).

just compensation if it does so.

San Diego Gas & Elec. Co. v. City of San Diego, 450 U.S. at 658-60.

Williamson was the second case in the line, establishing the two-pronged ripeness test.[9]

Next came MacDonald, Sommer & Frates v. Yolo County, in which the Supreme Court again

dismissed on ripeness grounds because the finality rule from Williamson was not met.  Justice

White, in dissent, wrote:

> Even where a property owner is deprived of its property only temporarily, if that
> deprivation amounts to a taking the Constitution requires  that just compensation be
> paid. If the governmental body that has taken the property decides to rescind the
> taking by amending the regulation, that does not reverse the fact that the property
> owner has been deprived of its property in the interim.

MacDonald, Sommer & Frates v. Yolo County, 477 U.S. at 362 (emphasis added).  Justice White

noted:

> I assume here that the normal action by the governmental entity following a
> determination that a particular regulation constitutes a taking will be to rescind the
> regulation. I believe that this is a permissible course of action, limiting liability for
> the taking to the interim period.  Of course, the governmental entity could actually
> condemn the property and pay permanent compensation for it.

Id. at 362 n. 4.

The Supreme Court finally reached the merits in First English Evangelical Lutheran Church

of Glendale v. Los Angeles County, Cal.  A California court had dismissed a church's takings claim

for compensation on the grounds that only declaratory or mandamus relief was available as a remedy

for a regulatory taking.  The Supreme Court noted that the issue was ripe for review because the

church had met the requirement "that one seeking compensation must 'seek compensation through

the procedures the State has provided for doing so,'" when the state courts dismissed its damages

---

[9] Unlike the other cases in this line, Williamson did not begin in the California state courts,
but in Tennessee federal court.

claim on the basis of the relief not being available.  482 U.S. at 312 n. 6 (quoting <u>Williamson</u>, 473 U.S. at 194).  The Supreme Court noted that "the [Fifth] Amendment makes clear that it is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking."  <u>First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.</u>, 482 U.S. at 315.  In the course of holding that compensation was required during the time that a regulation amounting to a taking is in effect, the Supreme Court noted that while, "as a matter of law, an illegitimate taking might not occur until the government refuses to pay, the interference that effects a taking might begin much earlier, and compensation is measured from that time."  <u>Id.</u> at 320 n.10.  "Once a court determines that a taking has occurred, the government retains the whole range of options already available -- amendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain."  <u>Id.</u> at 321. The Supreme Court ultimately held that, on the assumption, given the posture of the case, that "the Los Angeles County ordinance has denied appellant all use of its property for a considerable period of years, . . . invalidation of the ordinance without payment of fair value for the use of the property during this period of time would be a constitutionally insufficient remedy."  <u>Id.</u> at 322.  The Supreme Court did not state that compensation was the only remedy for a taking or that an injunction or invalidation of an ordinance was impermissible, but neither did the Supreme Court mention that such relief was also an acceptable corollary to the constitutionally mandated just compensation.

The dissent in <u>First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.</u>, like the majority, indicated that, when a regulation goes too far and works a taking, "the government has a choice: it may abandon the regulation or it may continue to regulate and compensate those whose property it takes."  <u>Id.</u> at 328.  Both the majority and dissent seem to have

contemplated that the government may choose to drop a regulation if it does not wish to pay compensation, but neither mentioned a general invalidation in which the plaintiff or the court strikes the law without giving the government the chance to compensate.  On the other hand, the dissent also seems to have contemplated that a regulation may be invalidated and thus not constitute a taking because the invalidated regulation is only a temporary deprivation.  See id. at 332.  The dissent criticized the majority for forcing governments to provide compensation for a temporary taking, rather than allowing invalidation to prevent the need for compensation.

> When a court invalidates a regulation, the Legislative or Executive Branch must then decide whether to condemn the property in order to proceed with the regulatory scheme. On the other hand, if the court requires compensation for a permanent taking, the Executive or Legislative Branch may still repeal the regulation and thus prevent the permanent taking. The difference, therefore, is only in what will happen in the case of Legislative or Executive inertia.

Id. at 335.

## ANALYSIS

The briefing on this motion to dismiss presents a large number of issues involving both the Court's jurisdiction and the merits of the Plaintiffs' claims.  The Court must decide jurisdictional issues first, of course, and the Court will therefore begin, and ultimately end, with the County of Santa Fe's contention that the claims before the Court are premature.   The Plaintiffs advance two theories why they need not first seek just compensation in state court to ripen a claim under the Takings Clause: (i) because they are making a facial challenge; and (ii) because they are not seeking compensatory relief.  Their first point has merit.  Although the law on this topic is opaque at best and beset with a three-to-two circuit split, the Court believes that the often expansive language the Supreme Court has used in discussing facial challenges compels the Court to find that, as a general matter, a facial challenge is exempt from Williamson's command that a plaintiff's first resort for a

taking must be to pursue just compensation at the state or local level.  The Plaintiffs run into trouble, however, because of their requested remedy.  Far from being the alternative escape route from Williamson that the Plaintiffs envision, their request for an injunction is, as the County contends, a form of relief that is premature when just compensation is available.  Despite the Plaintiffs casting their Complaint as a facial challenge, the relief they want leads the Court to conclude that their Takings Clause claim is not ripe.  Once this domino falls, the rest of the Plaintiffs' claims follow.  Their due-process and equal-protection claims are intertwined with the same facts underlying the takings claim, and are subsumed under the more specific protection of the Takings Clause, rendering them premature as well.  Absent jurisdiction over some federal claim, the Court is without jurisdiction over the state causes of action the Plaintiffs have pled.  Accordingly, the Court will dismiss all the claims the Plaintiffs have brought against the County of Santa Fe for lack of subject-matter jurisdiction.

**I.     ONLY THE COUNTY PLAINTIFFS HAVE STANDING TO BRING AN ACTION AGAINST THE COUNTY OF SANTA FE.**

The Court has already dismissed the claims against the City of Santa Fe brought in this case on the grounds that none of the Plaintiffs have standing.  While the County of Santa Fe has not raised the same challenge here, the Court must assure itself of its jurisdiction.  Two of the Plaintiffs, Dennis R. Branch and Joann W. Branch, have not made any allegations that they own property subject to the County Ordinance or that they are even contemplating plans that the County Ordinance might impact.  They therefore lack standing to prosecute any action against the County. The remaining Plaintiffs, the County Plaintiffs, have alleged that they "own parcels of land in Santa Fe County" and that they "intend to proceed with the development of these properties but are being impacted by" the County Ordinance.  Complaint ¶ 7, at 2.  In contrast to the Branches, the County

Plaintiffs have alleged a sufficiently particularized and concrete interest that the County Ordinance may be adversely impacting to establish standing.

## II.     WHILE FACIAL CLAIMS ARE GENERALLY RIPE THE MOMENT AN ORDINANCE IS PASSED, INJUNCTIVE RELIEF IS PREMATURE UNTIL A PLAINTIFF IS DENIED JUST COMPENSATION.

Ripeness is a jurisdictional issue, and so the Court will first address whether the Plaintiffs' claims are ripe for adjudication. The parties agree that the finality rule in Williamson does not apply to the Plaintiffs' takings claim, which raises a facial challenge to the constitutionality of the County Ordinance. The central question is whether the Plaintiffs need to satisfy the second prong of the Williamson test, which, in most circumstances, requires plaintiffs to first seek just compensation through channels available at the state and local level. It is undisputed that the Plaintiffs have not sought such relief, and therefore, for their claim to be ripe, the second prong of Williamson must be inapplicable to their claim. The Plaintiffs contend that, because their takings challenge is a facial challenge and because they are not seeking compensation, they need not seek just compensation as a prerequisite to making a constitutional attack on the County Ordinance. The County of Santa Fe disagrees and argues that the facial nature of the Plaintiffs' claim does not relieve them of the burden to pursue just compensation in state court and that the Plaintiffs cannot seek injunctive relief. The Court concludes that a facial challenge will generally avoid the need to seek just compensation first, but that injunctive relief is nonetheless premature when there are procedures available for receiving just compensation.

### A.     THE PLAINTIFFS' FACIAL CHALLENGES RELIEVE THEM OF THE NEED TO SEEK JUST COMPENSATION.

While there are no Supreme Court cases directly on point, there is broad language in several Supreme Court opinions indicating that facial challenges are exempt from the just-compensation

requirement under Williamson.  In Yee v. City of Escondido, Justice O'Connor wrote that "a claim that the ordinance effects a regulatory taking *as applied* to petitioners' property would be unripe" because they had not sought a rent increase, 503 U.S. at 533-34 (emphasis in original)(citing Williamson, 473 U.S. at 186-97), but that the petitioners were "mount[ing] a *facial* challenge to the ordinance," Yee v. City of Escondido, 503 U.S. at 534 (emphasis in original).  Because the facial challenged did not "depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated," the Supreme Court held that the challenge was ripe.  Id.  Similarly, in Suitum v. Tahoe Regional Planning Agency, the Supreme Court noted that "facial challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed."  520 U.S. at 736 n.10 (internal quotation marks omitted).  More recently, in San Remo Hotel, L.P. v. City and County of San Francisco, the Supreme Court noted that the petitioners in that case "were never required to ripen the heart of their complaint -- the claim that the [challenged regulation] was facially invalid because it failed to substantially advance a legitimate state interest -- in state court."  545 U.S. at 345.

The language from these cases is expansive.  They indicate that the Supreme Court views facial challenges under the Takings Clause through a different prism than it views as-applied claims.  While the County has several strong arguments for why these cases should be read differently or distinguished, the Court is reluctant to take such an approach.  A district court must be careful in drawing overly fine distinctions in Supreme Court cases or in characterizing something the Supreme Court has said as dicta.  It may well be that the broad language the Court has quoted was made in passing and without full attention to the nuances it might convey, but making that determination is a job for which the Supreme Court and perhaps the Tenth Circuit is better suited.

Nor is the principle the Court gleans from these Supreme Court cases an aberration.  Three circuit courts of appeals have reached similar conclusions.  After noting that the district court below had found a claim premature because of a failure to seek "recovery through the state's inverse condemnation procedure", the First Circuit, relying, like the Court, on Suitum v. Tahoe Regional Planning Agency and Yee v. City of Escondido, held that, when a plaintiff "is making a facial statutory challenge, its takings claim need not be brought first to a [state] body, either administrative or judicial."  Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d at 14.  The Fourth Circuit has also "recognize[d] . . . that the state procedures requirement does not apply to facial challenges to the validity of a state regulation." Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 493 F.3d at 407 (citing San Remo Hotel, L.P. v. City and County of San Francisco and Lingle v. Chevron U.S.A., Inc.).  Finally, the Seventh Circuit's view is that "the Supreme Court has held that many facial challenges to legislative action authorizing a taking can be litigated immediately in federal court."  Peters v. Village of Clifton, 498 F.3d at 732 (citing San Remo Hotel, L.P. v. City and County of San Francisco and Yee v. City of Escondido).

The development of the Williamson test provides further support for this interpretation. Williamson's roots are in Agins v. City of Tiburon and Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.  In both of these cases, the Supreme Court used ripeness principles to limit what it considered in ruling on a facial challenge.  The Supreme Court did not find the facial challenges to be premature.  Rather, it found that the facial challenges had to be narrow challenges because they lacked the detailed record and factual milieu that would be created in an as-applied challenge.  Thus, in Agins v. City of Tiburon, the Supreme Court held that, because the plaintiffs had "not submitted a plan for development of their property as the ordinances permit . . . . the only

question properly before [it] [wa]s whether the mere enactment of the zoning ordinances constitute[d] a taking." 447 U.S. at 260. The Supreme Court did not discard the facial challenge; rather, it limited the scope of inquiry. Similarly, in Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc., the Supreme Court held that the petitioners could not "legitimately raise complaints . . . about the manner in which the challenged provisions of the Act have been or will be applied in specific circumstances, or about their effect on particular coal mining operations." 452 U.S. at 297. Again, the Supreme Court opted to narrow rather than to dismiss wholesale.

Against this background, the Supreme Court articulated the two-part test in Williamson. Williamson was an as-applied regulatory-takings case. Given the history preceding it, Williamson can reasonably be understood as more clearly formulating the rule to be applied to a specific class of cases, such as the as-applied case at issue in Williamson. On this view, Williamson is more of a clarification and the next step in the incremental development of the proper issues for as-applied and for facial challenges. The County's interpretation requires reading Williamson as a more dramatic departure from the Supreme Court's past practice, in which the Supreme Court was willing to entertain facial challenges under the Takings Clause, but with a limited scope of inquiry. This reading is particularly problematic given that Williamson discussed and relied on Agins v. City of Tiburon and Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc. without even so much as a footnote about how the new test might be at odds with the Supreme Court's decisions to consider facial challenges in those earlier cases.

The County's arguments, however, are not without force. There are a number of potentially meritorious reasons why facial challenges should be treated no differently than other takings claims when applying the second prong of Williamson. Nor is the County spinning out a quixotic version of the law. The County can marshal two circuit courts behind its favored interpretation of how the

ripeness doctrine should be applied to facial challenges.  Ultimately, however, the County's arguments are not without problems of their own, and in the end, the Court does not find them persuasive enough to allow the Court to set aside the broad language that the Supreme Court has used not just once, but on several occasions.

First, the holding in Yee v. City of Escondido can plausibly be read as covering only facial challenges that are based on the theory that the challenged regulation fails to substantially advance legitimate government interests.  This theory, however, has been eliminated from the Takings Clause analysis.  See Lingle v. Chevron U.S.A. Inc., 544 U.S. at 545.  After Lingle v. Chevron U.S.A. Inc., Yee v. City of Escondido is an uncertain foundation on which to rest a theory that all facial challenges under the Takings Clause need not satisfy Williamson's second prong.

Yee v. City of Escondido began its discussion of ripeness with broad language that the petitioners' challenge there would have been unripe if brought as an as-applied challenge, but was a facial challenge and therefore ripe.  See 503 U.S. at 533-34.  The particular theory that the Supreme Court discussed, however, was the substantially advances test, and the Supreme Court's reasoning why that theory need not be ripened in state court seems to have turned on the peculiarities of that theory, and not on the distinctive features of facial challenges as a class in comparison with as-applied challenges.  The Supreme Court explained that the substantially advances test "does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated."  Id. at 534.  If the Supreme Court's holding on ripeness in Yee v. City of Escondido is understood as being thus limited to this particular theory, a theory no longer viable in takings jurisprudence, then the support the later cases from the Supreme Court and the circuit courts might offer to the Plaintiffs' position is seriously undercut because most, if not all, of those cases

ultimately rely upon Yee v. City of Escondido.

This reading is not without problems.  While it is a reasonable interpretation of Yee v. City of Escondido, it is not the only interpretation, and in at least one case, the Supreme Court has broadly stated that "facial challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed."  Suitum v. Tahoe Regional Planning Agency, 520 U.S. at 736 n.10 (internal quotation marks omitted).  Moreover, even if the Court viewed the language from Yee v. City of Escondido as dicta, it is dicta written with an awareness of Williamson, which the Supreme Court cites when it mentions the issue of ripeness, see Yee v. City of Escondido, 503 U.S. at 534, and thus is on a different level than a casual line from an opinion that might seem to contradict a particular doctrine from another case that is not even mentioned.

The unique nature of the substantially advances theory in Yee v. City of Escondido leads to the second justification for not treating facial challenges any differently than other Takings Clause cases when it comes to just compensation.  If the reason that the particular facial challenge in Yee v. City of Escondido was ripe was that it did "not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated," 503 U.S. at 534, then it is difficult to understand, conceptually, why other facial challenges would fall into the same category.  With the exception of a taking for private use, rather than for public use, an unconstitutional taking occurs only when a property owner has been denied just compensation.  "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."  Williamson, 473 U.S. at 194. The substantially advances theory was unique in the takings jurisprudence in that it "reveal[ed] nothing about the magnitude or character of the burden a particular regulation imposes upon private property rights.  Nor d[id] it provide any information about how any regulatory burden is distributed

among property owners." Lingle v. Chevron U.S.A. Inc., 544 U.S. at 542. It was because this particular theory was unmoored from the general principles of takings law that the Supreme Court relegated it to the realm of due process. The validity of a regulation is not an issue under the Takings Clause, because "the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose." Lingle v. Chevron U.S.A. Inc., 544 U.S. at 543. While it is possible to see how the substantially advances theory could have been separated out from other theories and held to not require a plaintiff to seek just compensation before raising a constitutional challenge, in the wake of Lingle v. Chevron U.S.A. Inc., it is difficult to see how a proper takings claim would not involve the issue of just compensation.

On deeper consideration, though, there is also something conceptually odd about requiring that a plaintiff be denied just compensation before bringing a facial challenge. Before a prospective plaintiff is denied just compensation, no one can bring a claim. After a person is denied just compensation, that person can bring a facial challenge, the ramifications of which may affect other prospective plaintiffs who have not been denied just compensation and could not themselves sue. Requiring denial of just compensation thus creates a fairly asymmetrical outcome.[10]

---

[10] On the other hand, this result may flow from the unique nature of the Takings Clause, which requires a refusal to provide just compensation before there is a constitutional violation. Asymmetrical it may be, but the logic of the Takings Clause may dictate that, until there is a denial of just compensation, there is no constitutional violation. Once the government has withheld just compensation, there is at least a constitutional violation, even if the remedy in a facial challenge might apparently be broader than the harm. Additionally, the Court is only addressing ripeness here, not the merits. The Court is assuming that a facial challenge is possible. Perhaps the answer to the conundrum is that, after Lingle v. Chevron, U.S.A., Inc., there are no valid facial-takings claims. The answer also might be that such challenges should be rare and reserved for situations where either proceedings to obtain just compensation are not available, or where, as discussed below, the government only intends to enforce a particular law if the law does not work a taking and require the payment of just compensation.

Nor does a facial challenge necessarily require that the Court consider whether a regulation provides for just compensation, although the Plaintiffs' particular challenge here might.  As discussed below, however, some facial challenges could involve situations where there is a presumption that the government will not provide just compensation if a regulation is found to constitute a taking, while other facial challenges might seek declaratory relief about whether a regulation effects a taking without affirmatively asking for an injunction or a declaration that the regulation is void.  Both of these scenarios would not depend upon the availability of just compensation.  In the former, just compensation is not available; in the latter, the only question is antecedent to the issue of compensation.

The final major reason to apply Williamson here is that many of the cases supporting the Plaintiffs' position, even if the language is broader or imprecise, can be distinguished because they involve scenarios where the finality rule of Williamson is more in play.  In both Yee v. City of Escondido and Suitum v. Tahoe Regional Planning Agency, the Supreme Court spoke expansively, but in response to ripeness questions that seemed to concern only the finality rule.  In Yee v. City of Escondido, the ripeness problem that was being raised and of which the Supreme Court swiftly disposed was whether the petitioners needed to seek a rent increase before mounting a facial attack on a rent-control ordinance.  See 503 U.S. at 533.  The broad language in the footnote in Suitum v. Tahoe Regional Planning Agency came during a discussion whether the first prong of Williamson was satisfied.  See 520 U.S. at 735.  Similarly, several of the circuit court cases can be traced back, at least in part, to cases dealing with the finality aspect of Williamson rather than the just-compensation aspect.  Daniels v. Area Plan Comm'n of Allen County, for instance, states that neither prong of Williamson applies to a facial challenge.  See 306 F.3d at 458 n. 13 ("Litigants are not required to meet the *Williamson County* ripeness requirements when solely mounting a

pre-enforcement facial challenge to the constitutionality of a statute under the Fifth Amendment."). Daniels v. Area Plan Comm'n of Allen County, however, relies on Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind., which discussed only the finality requirement and never mentioned the second prong of Williamson.

Again, these arguments have some force, but depend heavily on a fine parsing of Supreme Court cases in an effort to limit the reach of broad language. That approach is not necessarily a wrong approach, but it is an approach that must be employed with caution. While the context of many of the cases might indicate that the issues were narrow, the language that they have produced is broad enough to encompass the second prong of Williamson.

Additionally, as the Court has noted, two circuit courts have concluded that facial challenges must still comply with the second prong of Williamson. Based primarily on the premise that the substantially advances theory in Yee v. City of Escondido was unique, the Ninth Circuit has allowed such challenges to be ripe without the plaintiff seeking just compensation first, but has otherwise required facial challenges to follow Williamson. See Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d at 406-07. The Ninth Circuit has continued to hold to this line of reasoning, see Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d at 1190 n.13 (noting that second prong applies to facial and as-applied challenges), and the Third Circuit has adopted it as well, see County Concrete Corp. v. Town of Roxbury, 442 F.3d at 168 (citing Sinclair Oil Corp. v. County of Santa Barbara). Balancing this out, however, and in fact tipping the scales the other way were the Court to simply take a head count, are the three circuits coming to the opposite conclusion.

Where the circuits are split and the Tenth Circuit has not spoken, neatly reconciling the disparate strands running through both the Supreme Court cases and the cases from the various circuit courts is not possible. No matter which way the Court rules, there will be loose threads and

rough edges.  After considering the cases and the underlying theories, however, the Court concludes that it should follow the broad language the Supreme Court has used.  Against the fine parsing in which the County would have the Court engage is the expansive language indicating a bright-line rule on facial challenges.  The conceptual difficulties in allowing a takings claim to go forward without a denial of just compensation are met by the conceptual difficulties in not allowing such cases to proceed.  Circuit courts are lined up on either side.  In such a situation, the Court believes that the best approach is to assume that the Supreme Court meant what it said and to understand Williamson as being limited to the as-applied context in which it arose, and not use it to find a facial challenge premature.

**B.**     **INJUNCTIVE RELIEF IS INAPPROPRIATE HERE, SO THE PLAINTIFFS ARE NOT ABLE TO AVOID THE JUST-COMPENSATION REQUIREMENT ON THAT GROUND.**

The County also argues that the Plaintiffs' takings claims are not ripe because the relief they seek, an injunction, is not appropriate relief.  Conversely, the Plaintiffs contend that their seeking injunctive relief rather than damages is another way they are able to avoid Williamson's second prong.  The County maintains that, in the aftermath of Lingle v. Chevron, U.S.A., Inc., only just compensation is an appropriate remedy for a public-use taking.  It would therefore follow that the Plaintiffs are required to seek just compensation before being able to raise a constitutional challenge to the County Ordinance.  While the Court need not take as strong a stance as the County urges -- that an injunction is inappropriate in all takings cases -- the Court agrees that, in these circumstances, injunctive relief would not be a proper remedy and that, as a result, the Plaintiffs' takings claims are not ripe, even though, as a general matter, facial challenges do not have to comply with Williamson.

Two separate lines of cases lead the Court to this conclusion.  One line of cases, culminating

in Eastern Enterprises v. Apfel, involved whether injunctive or declaratory relief against federal laws was appropriate under the Takings Clause given that the Tucker Act provides a basis for seeking just compensation. The second line of cases all involve appeals to the Supreme Court from the California state courts, culminating in First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal., that focus on whether the Takings Clause requires compensation as a remedy for a taking. Neither line of cases directly dispose of the question here, but both indicate that injunctive relief is inappropriate here. Enjoining the County of Santa Fe from enforcing its Ordinance would also seem a particularly unusual result given that it is not clear that the County would refuse to provide just compensation were its Ordinance found to constitute a taking.

### 1.   Threshold Issues.

Before turning to whether an injunction would be allowable here, the Court must address a trinity of threshold questions: (i) whether the permissibility of injunctive relief is a jurisdictional question, impacting the ripeness analysis, or whether it is a question on the merits concerning whether the Plaintiffs' have alleged a valid cause of action; (ii) whether the Court should consider the County's argument about the inappropriateness of injunctive relief, which was raised in their Reply and not in their original motion; and (iii) what is the nature of the relief that the Plaintiffs are seeking. The Court believes that the question is one of ripeness, that it is appropriate to consider the County's arguments, and that the Plaintiffs are seeking an injunction against the enforcement of the County Ordinance and perhaps a declaration that the Ordinance is invalid.

On its face, a request for injunctive relief rather than damages or compensation does not necessarily obviate Williamson's requirements. Conceptually, however, if non-monetary relief is available, then just compensation might not be required, which, given the unique structure of the ripeness doctrine in takings jurisprudence, indicates that the type of relief available is interlaced with

the question of ripeness.  Moreover, <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986 (1984), indicates that the issue is jurisdictional.  In that case, the Supreme Court held that a challenge to the constitutionality of a statute seeking an injunction was not "ripe for . . . resolution" because "the Tucker Act [wa]s available as a remedy for any uncompensated taking Monsanto may suffer . . . ." <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. at 1019.

It also appropriate, for several reasons, for the Court to consider this argument despite it being raised in the Reply.  First, the issue of ripeness is jurisdictional, and with the Court holding that the availability of injunctive relief bears on the ripeness issue, the Court has an independent obligation to establish its jurisdiction separate from the parties' arguments.  Second, the Plaintiffs argued in their Response that their choice of remedy was one reason they need not satisfy the <u>Williamson</u> ripeness test.  The Plaintiffs thus injected the issue into the debate.  The first time that the County argued that the inappropriateness of an injunction was also grounds for dismissal on ripeness grounds was at the hearing, <u>see</u> Tr. at 66:23-68:5 (Freilich), but the underlying argument was made in the Reply in response to an issue the Plaintiffs raised.  Finally, the Court heard extensive argument on this case at a hearing lasting the better part of a day, so both parties have had ample time to bring to the Court's attention whatever they feel is important.  The Plaintiffs have also not sought to supplement their briefing or to file a surreply.  The Court thus feels it is fair to the Plaintiffs to consider the arguments raised in the Reply in general and particularly the argument regarding the propriety of injunctive relief.

Finally, the Court understands the Complaint as primarily seeking injunctive relief and perhaps also seeking a declaration that the County Ordinance is completely void.  Both sides mentioned a request for declaratory and injunctive relief several times during the hearing.  The Complaint, however, seems to focus on an injunction for the federal claims.  The Plaintiffs have

styled their Complaint as a "Complaint for Injunctive Relief."  Complaint at 1 (bold typeface and capitalization removed).  In Count IV, the Plaintiffs state that, "[i]ncluded in the protections and remedies under 42 U.S.C. § 1983 is the right to injunctive relief barring the unconstitutional acts of municipalities and counties."  Complaint ¶ 53, at 10.  The Plaintiffs then request that the City and County Ordinances "be barred and stricken as violating the constitutional rights of the Plaintiffs."  Complaint ¶ 54, at 10.  No mention is made of declaratory relief, nor is the Declaratory Judgment Act invoked.  In their prayer for relief, the Plaintiffs request that both Ordinances "be declared invalid and of no force and effect."  Complaint at 12.  Only in Count VI, however, do the Plaintiffs make any other mention of declaratory relief, where they specifically request that the Ordinances "be declared invalid as contrary to New Mexico Statute."  Complaint ¶ 67, at 12.  For the federal claims then, the Plaintiffs seem to principally seek an injunction against the enforcement of the County Ordinance and possibly also a declaration that the Ordinance is "of no force and effect," which is similar.  The important feature both share is that the Plaintiffs are seeking relief which would forbid, either through a direct injunction or perhaps through the authority of a declaration of invalidity, the County of Santa Fe from acting pursuant to its Ordinance.  For simplicity's sake, the Court will generally refer to injunctions below.

## 2.    Injunctive Relief is Not Appropriate When Just Compensation Procedures are Available.

The Coal Act spawned a significant amount of federal litigation.  Under the Coal Act, various coal mining companies were required to transfer surplus amounts from existing benefits funds to a new fund providing health benefits for coal mine workers.  Several cases involving the Takings Clause arose out of the litigation over the Coal Act.  While not directly addressing whether the availability of just compensation forecloses equitable relief, these cases indicate that the state

-44-

of the law is that access to just compensation bars equitable relief.

The first major Coal Act case relevant here was In re Chateaugay Corp., which included a claim that the transfers the Coal Act required amounted an unconstitutional taking without just compensation. Addressing whether the challenge was ripe, the Second Circuit noted that the Supreme Court has often required plaintiffs claiming a taking by the federal government to seek compensation under the Tucker Act, but had taken jurisdiction over several cases without reference to the Tucker Act. See In re Chateaugay Corp., 53 F.3d at 492-93 (citing Duke Power Co. v. Carolina Environmental Study Group, Inc., Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, and Connolly v. Pension Ben. Guar. Corp.). The Second Circuit "resolve[d] this apparent inconsistency by looking not so much to what the Supreme Court has said, but to what it has done." In re Chateaugay Corp., 53 F.3d at 493. With this in mind, the Second Circuit "conclude[d] that a distinction must be drawn between (a) statutes burdening real and tangible property, and (b) those requiring direct transfers of money to the government." Id. Thus,

> where the challenged statute requires a person or entity to pay money to the government, it must be presumed that Congress had no intention of providing compensation for the deprivation through the Tucker Act. Common sense dictates such a presumption. . . . [The normal] presumption would tend to nullify all existing legislation adjusting the benefits and burdens of economic life: Every dollar paid pursuant to a statute would be presumed to generate a dollar of Tucker Act compensation. Instead, we hold that the *Williamson County/Preseault* presumption of Tucker Act availability must be reversed where the challenged statute, rather than burdening real or physical property, requires a direct transfer of funds to the government.

In re Chateaugay Corp., 53 F.3d at 493.

In Eastern Enterprises v. Apfel, a plurality of four justices adopted in large part the ripeness holding of In re Chateaugay Corp. Confronting a takings claim under the Coal Act, the plurality

-45-

noted that "a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." Eastern Enterprises v. Apfel, 524 U.S. at 520. The plurality noted, however, that Eastern Enterprise did not seek compensation. The plurality recognized that Supreme Court "precedent can be read to support the . . . conclusion that regardless of the nature of relief sought, the availability of a Tucker Act remedy renders premature any takings claim in federal district court." 524 U.S. at 521. Following In re Chateaugay, the plurality found that just compensation was presumed to not be available when just compensation requirements would mandate that the government pay the exact amount it was ordering transferred. See Eastern Enterprises v. Apfel, 524 U.S. at 521. The plurality also quoted from Duke Power Co. v. Carolina Environmental Study Group, Inc.'s statement that "the Declaratory Judgment Act 'allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained,'" Eastern Enterprises v. Apfel, 524 U.S. at 521 (quoting Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. at 71 n.15), and relied on the fact that the Supreme Court had, without discussing the matter, ruled on the merits of similar cases, see Eastern Enterprises v. Apfel, 524 U.S. at 521-22. The dissent, while emphasizing that the case should be considered under the Due Process Clause, highlighted the problem of allowing injunctive relief under the Takings Clause: "[C]ould a court apply the same kind of Takings Clause analysis when violation means the law's invalidation, rather than simply the payment of 'compensation?'" Eastern Enterprises v. Apfel, 524 U.S. at 556 (citing First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. at 315 ("[The Takings Clause] is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise

-46-

proper interference amounting to a taking.").

These cases indicate the appropriateness of an injunction in the right circumstances. This case does not, however, involve the right circumstances. The County Ordinance largely falls under the heading of burdening real property in the <u>In re Chateaugay Corp.</u> classification scheme. Direct money transfers are a possibility -- the County Ordinance provides for cash payments in lieu of housing set-asides. This feature, though, is only a small part of a regulatory framework whose defining characteristic is the regulation of real property. Cash payments are also only an option under the County Ordinance and not a mandatory feature.

Even if the Ordinance were to fall, at least in part, under the label of money transfer, the logic of <u>In re Chateaugay Corp.</u> and <u>Easter Enterprises v. Apfel</u> would still not dictate that injunctive relief is appropriate. Both cases involved the interplay of the Coal Act and the Tucker Act, two federal statutes. Recognizing the absurdity of Congress taking a dollar with one hand and giving back the exact same dollar with the other hand, the Seventh Circuit and four justices on the Supreme Court decided that the "'presumption of Tucker Act availability must be reversed where the challenged statute, rather than burdening real or physical property, requires a direct transfer of funds' mandated by the Government." <u>Eastern Enterprises v. Apfel</u>, 524 U.S. at 521 (quoting <u>In re Chateaugay Corp.</u>, 53 F.3d at 493). In effect, the later intent to deny just compensation trumps the general assumption that just compensation is available for the asking under the Tucker Act. Unlike those cases, however, here the just compensation would be provided through the inverse condemnation laws that the State of New Mexico has enacted, while the entity allegedly doing the taking is the County of Santa Fe. No direct conflict in legislative purpose occurs when the hand doing the taking belongs to a county, while the hand that insists on giving back belongs to a state. Essentially, assuming there was a taking, the County of Santa Fe might not want to provide just

compensation, but the State of New Mexico would veto that decision and require compensation. Moreover, even if there were a direct conflict between the intent of the County Ordinance and the goal of providing just compensation for takings, it is not clear, given the complexity of the Ordinance, that paying just compensation would undermine the County of Santa Fe's goals.  And even if the County would not wish to continue with the Ordinance if a court held that the Ordinance required just compensation, the County should be the one to make that decision, rather than having a court decide on its behalf.  "Once a court determines that a taking has occurred, the government retains the whole range of options already available -- amendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain."  First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal., 482 U.S. at 321.

Eastern Enterprises v. Apfel is consonant with this approach.  The plurality opinion largely adopts In re Chateaugay Corp.'s analysis.  In re Chateaugay Corp.'s core reasoning about reversing the presumption of Tucker Act availability is retained intact in the plurality opinion.  The plurality opinion, however, avoids directly answering the central question facing the Court.  The plurality opinion recognized that Supreme Court "precedent can be read to support the . . . conclusion that regardless of the nature of relief sought, the availability of a Tucker Act remedy renders premature any takings claim in federal district court."  Eastern Enterprises v. Apfel, 524 U.S. at 521.  Because the plurality found the Tucker Act remedy unavailable, however, they did not need to squarely answer whether, if the remedy were available, the taking claim would have been premature.

Despite the lack of a firm holding on the issue, the plurality opinion acknowledges that the Supreme Court's precedent has often found that the availability of a procedure for seeking just compensation will render premature other avenues of relief under the Takings Clause.  While the plurality arguably hints that this may not necessarily be the case, the plurality also does not identify

a situation, other than perhaps Duke Power Co. v. Carolina Environmental Study Group, Inc., where the Supreme Court had specifically allowed some other form of relief when compensation though the Tucker Act was available.  Duke Power Co. v. Carolina Environmental Study Group, Inc., however, pre-dates Williamson.  It is also not clear whether the declaratory relief endorsed in Duke Power Co. v. Carolina Environmental Study Group, Inc. would extend to a prohibitive injunction or to a declaration that a regulation was "of no force and effect," Complaint at 12, thus prohibiting a regulation from being used even if just compensation could be forthcoming, rather than a more modest declaration of rights stating that a regulation, if used, requires compensation.  See Duke Power Co. v. Carolina Environmental Study Group, Inc., 428 U.S. at 71 n.15 ("While the Declaratory Judgment Act does not expand our jurisdiction, it expands the scope of available remedies. Here it allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained.").  Aside from pre-dating Williamson, Duke Power Co. v. Carolina Environmental Study Group, Inc. also pre-dates the Supreme Court's later holding that "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." Ruckelshaus v. Monsanto Co., 467 U.S. at 1016.  While four justices arguably were in favor of continuing to rely on the doctrine expressed in footnote 15 of Duke Power Co. v. Carolina Environmental Study Group, Inc., another four justices were opposed to this approach.  The plurality did not specifically rest its decision on Duke Power Co. v. Carolina Environmental Study Group, Inc., because it found that the Tucker Act was unavailable, and the logic of Duke Power Co. v. Carolina Environmental Study Group, Inc. seems to have been overtaken by subsequent case law. In this situation, a district court probably should, and may indeed be bound, to follow the later

holdings in <u>Williamson</u> and <u>Ruckelshaus v. Monsanto Co.</u>

Coupled with the dissent's hostility to using the Takings Clause for invalidating a law, <u>Eastern Enterprises v. Apfel</u> primarily supports not allowing a declaration of invalidity and certainly not allowing injunctive relief where, as here, a compensation remedy is available.  At best for the Plaintiffs, <u>Eastern Enterprises v. Apfel</u> leaves the door open ever so slightly for injunctive relief in the face of just compensation remedies.  Holding the door closed, however, are several other Supreme Court cases specifically finding a takings claim premature when the plaintiff had not sought just compensation.  One day, in some future case, the Supreme Court might be willing to force the door open.  This Court, however, must be more cautious and cannot casually push aside the cases standing in the way.

### 3.  Whether to Maintain a Regulation or Abandon the Regulation and Pay Only Compensation for a Temporary Taking is not a Decision for the Courts.

The second line of cases leading the Court to conclude that injunctive relief is inappropriate here is a series of cases that began in the California courts.  The central issue in those cases was whether, when a law was found to be a taking and the government elected not to continue enforcing the law or the law was invalidated, a property owner had to be compensated for the temporary taking.  For various reasons, the Supreme Court found itself unable to answer the question in several cases.  Finally, in <u>First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.</u>, the Court answered the question yes.  In that case and along the way, however, the Supreme Court discussed several issues bearing on whether injunctive relief is appropriate for takings.  The County of Santa Fe urges the Court to read <u>First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.</u> as holding that compensation is the sole remedy for a taking.  While the Court cannot comfortably go that far, <u>First English Evangelical Lutheran Church of Glendale</u>

v. Los Angeles County, Cal. and its predecessors support the County's position that the Plaintiffs'
claims are premature.  Much of the discussion in First English Evangelical Lutheran Church of
Glendale v. Los Angeles County, Cal. and in the dissents in its predecessors indicates that a court
should not invalidate a regulation, in the normal sense of the world, but should instead place the
burden on the government to elect how it will proceed when a regulation is found to be a taking.

While the majority in San Diego Gas & Elec. Co. v. City of San Diego found the issue
premature, Justice Brennan, in a lengthy dissent whose discussion of the merits would ultimately
triumph in First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.,
would have found the issue ripe.  Justice Brennan considered "invalidation" insufficient and
proposed that,

> once a court finds a police power regulation has effected a "taking," the government
> entity must pay just compensation for the period commencing on the date the
> regulation first effected the "taking," and ending on the date the government entity
> chooses to rescind or otherwise amend the regulation. . . . Should the government
> decide immediately to revoke or otherwise amend the regulation, it would be liable
> for payment of compensation only for the interim during which the regulation
> effected a "taking." . . . Alternatively the government may choose formally to
> condemn the property, or otherwise to continue the offending regulation: in either
> case the action must be sustained by proper measures of just compensation. . . . The
> States should be free to experiment in the implementation of this rule, provided that
> their chosen procedures and remedies comport with the fundamental constitutional
> command. . . . The only constitutional requirement is that the landowner must be able
> meaningfully to challenge a regulation that allegedly effects a "taking," and recover
> just compensation if it does so.

San Diego Gas & Elec. Co. v. City of San Diego, 450 U.S. at 658-60.

Justice White, in dissent, expressed a similar view in MacDonald, Sommer & Frates v. Yolo
County:

> I assume here that the normal action by the governmental entity following a
> determination that a particular regulation constitutes a taking will be to rescind the
> regulation. I believe that this is a permissible course of action, limiting liability for
> the taking to the interim period.  Of course, the governmental entity could actually

condemn the property and pay permanent compensation for it.

477 U.S. at 362 n.4.

When the Supreme Court finally reached the merits in <u>First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.</u>, with both Justice Brennan and Justice White now in the majority, it noted that "the [Fifth] Amendment makes clear that it is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." <u>First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.</u>, 482 U.S. at 315. In the course of holding that compensation was required during the time that a regulation amounting to a taking is in effect, the Supreme Court noted that, while, "as a matter of law, an illegitimate taking might not occur until the government refuses to pay, the interference that effects a taking might begin much earlier, and compensation is measured from that time." <u>Id.</u> at 320 n.10. "Once a court determines that a taking has occurred, the government retains the whole range of options already available -- amendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain." <u>Id.</u> at 321. The Supreme Court did not state that compensation was the only remedy for a taking or that an injunction or invalidation of an ordinance was impermissible, but neither did the Supreme Court mention that such relief was also an acceptable corollary to the constitutionally mandated just compensation.

The dissent in <u>First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.</u>, like the majority, indicates that, when a regulation goes too far and works a taking, "the government has a choice: it may abandon the regulation or it may continue to regulate and compensate those whose property it takes." <u>Id.</u> at 328. Both the majority and dissent seem to have contemplated that the government may choose to drop a regulation if it does not wish to pay

compensation, but neither mentioned a general invalidation in which the plaintiff or the court strikes the law without giving the government the chance to compensate.  On the other hand, the dissent also seemed to have contemplated that a regulation may be invalidated and thus not constitute a taking because the invalidated regulation is only a temporary deprivation.  See id. at 332.  The dissent criticized the majority for forcing governments to provide compensation for a temporary taking, rather than allowing invalidation to prevent the need for compensation.

> When a court invalidates a regulation, the Legislative or Executive Branch must then decide whether to condemn the property in order to proceed with the regulatory scheme. On the other hand, if the court requires compensation for a permanent taking, the Executive or Legislative Branch may still repeal the regulation and thus prevent the permanent taking. The difference, therefore, is only in what will happen in the case of Legislative or Executive inertia.

Id. at 335.

Throughout First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal. and the cases before it, the Supreme Court and various dissenters made use of the term "invalidation."  Each case, however, seems to have contemplated that, upon such an "invalidation," the government retains the power to pay off the affected property owner and continue with its regulation, or instead rescind or change the regulation.  See, e.g., id. at 321 ("Once a court determines that a taking has occurred, the government retains the whole range of options already available -- amendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain."); MacDonald, Sommer & Frates v. Yolo County, 477 U.S. at 362 n. 4 (White, J., dissenting)("I assume here that the normal action by the governmental entity following a determination that a particular regulation constitutes a taking will be to rescind the regulation."); San Diego Gas & Elec. Co. v. City of San Diego, 450 U.S. at 659 (Brennan, J., dissenting)("Should the government decide immediately to revoke or otherwise amend the regulation . . . .").  Despite the

talk of "invalidation," the Supreme Court seems to have used the term to mean that a taking has occurred and that compensation is therefore due, but that a government otherwise retains the flexibility to decide how to proceed, so long as just compensation is paid.  Accordingly, the Court cannot read First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal. as making just compensation the only remedy for a taking if a plaintiff were willing to disclaim compensation, or more strongly, as giving just compensation pre-emptive effect and invalidating a state's decision to expand the menu of remedies available for a taking, so long as compensation is one of the selections.  Nothing in First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal., however, indicates that enjoining a government from enforcing its regulations is appropriate.  Rather, First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal. and its predecessors seem to contemplate that a court could declare that a regulation would constitute a taking and thus require compensation, but that the choice whether to stop the operation of the regulation is an executive or legislative choice.  Enjoining the County of Santa Fe from following through with its Ordinance, or declaring its Ordinance "of no force and effect," would be contrary to these cases which indicate that the choice should be the County's.  None of the cases in the English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal. line seem to involve facial challenges, but it seems that their logic would apply with even greater force in a facial-challenge situation: In an as-applied situation, the relief would only be with respect to the particular plaintiffs, but in a facial challenge a plaintiff could, as the Plaintiffs here seek to do, invalidate a regulation with respect to everyone subject to it, even though the government would be willing to pay just compensation to see its plans to fruition.

In a related vein, the Plaintiffs quote Justice Ginsburg's partial concurrence in Wilkie v. Robins for the idea that they can elect to refuse to submit to a taking unless compensation is offered

to them.  Justice Ginsburg wrote:

> The Takings Clause instructs that no "private property [shall] be taken for public use, without just compensation." U.S. Const., Amdt. 5.  Robbins argues that this provision confers on him the right to insist upon compensation as a condition of the taking of his property. He is surely correct. Correlative to the right to be compensated for a taking is the right to refuse to submit to a taking where no compensation is in the offing. Cf. *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (invalidating a permit condition that would have constituted a taking); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (same).

Wilkie v. Robbins, 127 S.Ct. 2588, 2617 (2007)(Ginsburg, J., concurring in part).  This language, of course, is not from a majority opinion.  It is also not clear that "the right to insist upon compensation as a condition" of a taking is a right under the Takings Clause.  Such a holding seems contrary to the principle that the Fifth Amendment does not "require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." Williamson, 473 U.S. at 194 (internal quotation marks omitted).  Moreover, Dolan v. City of Tigard and Nollan v. California Coastal Comm'n came to the Supreme Court from reviews of state administrative hearings via the state appellate process.  See Dolan v. City of Tigard, 512 U.S. at 377-83 (describing history of case, which involved appeal from the Land Use Board of Appeals to the Oregon Court of Appeals); Nollan v. California Coastal Comm'n, 483 U.S. at 827-30 (describing history of case, which began with writ of administrative mandamus for judicial review of the California Coastal Commission's action).   Neither case involved a direct action brought in federal court raising a takings claim.  It is thus not clear that the cases involved invalidating conditions that would have amounted to takings.  Rather, the Supreme Court appears to have been exercising its power to review constitutional issues arising in state court proceedings and finding that the challenged administrative actions would be takings without compensation.  Indeed, Nollan v. California Coastal

Comm'n ends by noting that "California is free to advance its comprehensive program, if it wishes, by using its power of eminent domain for this public purpose, but if it wants an easement across the Nollans' property, it must pay for it."  483 U.S. at 841-42 (internal quotation marks and citation omitted).  Given their procedural posture, it is far from clear that <u>Dolan v. City of Tigard</u> and <u>Nollan v. California Coastal Comm'n</u> can be understood as recognizing a freestanding right to refuse to submit to a taking without first being provided with just compensation.

### 4.   <u>Enjoining a Regulation Without a Plaintiff Being Denied Just Compensation Conflicts with the Purpose of the Takings Clause.</u>

The same tension that exists in allowing facial challenges to regulations under the Takings Clause without a showing of the denial of just compensation is present in allowing injunctive relief under the Takings Clause, but to a greater degree and without the support of broad language from the Supreme Court arguably encouraging the view that facial challenges enjoy.  An injunction absolutely barring the enforcement of the County Ordinance, such as the Plaintiffs seek, <u>see</u> Complaint ¶ 54, at 10, would prohibit the County from proceeding with a valid policy even if the County were willing to provide just compensation, <u>see</u> <u>Lingle v. Chevron U.S.A. Inc.</u>, 544 U.S. at 543 ("[T]he Takings Clause presupposes that the government has acted in pursuit of a valid public purpose.").  The tension in this result is greater than in allowing facial challenges because allowing a facial challenge only forces the government to defend its regulations despite having not denied a plaintiff just compensation, whereas an injunction would forbid the government from even acting on its regulations despite having not denied just compensation.  As the Supreme Court stated: "Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking."  <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. at 1016.

Holding that some facial challenges might be ripe despite no denial of just compensation and finding injunctive relief inappropriate here are not incompatible conclusions.  While facial challenges, given the breadth of the undertaking, seem to go hand in hand with injunctions, a facial challenge need not entail injunctive relief.  A facial challenge could seek declaratory relief about whether the regulation effects a taking, but not seek to enjoin the enforcement of the regulation or have the regulation declared unconstitutional and void.  Rather, such a declaration might serve to streamline just-compensation proceedings, as the issue would focus on the amount of compensation a particular plaintiff was owed, without requiring a preliminary determination of a taking. Moreover, injunctive relief might be appropriate even in a facial challenge in situations such as Eastern Enterprises v. Apfel, where the presumption is that just compensation is not available. Although the Court is not reaching the merits, it also may be that the answer is that the County is correct that, after Lingle v. Chevron U.S.A., Inc., facial challenges are not the correct vehicle to bring actions under the Takings Clause and that this ultimately resolves the tension that is rife in the case law.

An informative case on invalidating regulations is Rose Acre Farms, Inc. v. Madigan, 956 F.2d 670 (7th Cir. 1992).  Seeking to reduce the possibility of a salmonella outbreak, the United States Department of Agriculture promulgated regulations that prevented producers from selling eggs from a flock of chickens in which salmonella was found until the flock has been certified salmonella-free.  One egg producer filed suit under the Takings Clause after falling under this ban on egg sales, and the district court set aside the regulations.  See id. at 673.  Reversing, the Seventh Circuit, in an opinion by Judge Easterbrook, held that "the takings clause does not forbid takings; it requires compensation for takings. . . . If compensation is forthcoming, the Constitution allows the taking. The Tucker Act offers whatever compensation the Constitution requires."  Rose Acre

Farms, Inc. v. Madigan, 956 F.2d at 673.  Notably, the regulations expressly stated that the Secretary of Agriculture took the position that the regulations did not require compensation.  The Seventh Circuit understood that this statement "announced a litigating position."  Id. at 674.  If the position turned out to be wrong, "the claims court w[ould] award compensation."  Id.  If the position was right, however, "no compensation is due.  Either way, it is inappropriate to halt the regulatory program."  Id.

In sum, the Court concludes that facial challenges generally avoid Williamson's requirement that normally a plaintiff must be denied just compensation before bringing a federal claim alleging a violation of the Takings Clause.  When the plaintiff, as here, seeks to have a regulation declared "of no force and effect" or enjoined, however, then the requirement is revived.  Equitable relief is generally not available when just compensation procedures are available and the drastic relief of total invalidation of a regulation or prohibiting its enforcement takes the decision out of the government's hands to, if it desires, provide just compensation and continue with a regulation even though the regulation amounts to a taking.  Because of the relief that the Plaintiffs are pursuing, they must first be denied just compensation.  They have not, and so their takings claim is premature.

If the Plaintiffs were seeking declaratory relief that the County Ordinance effected a taking and required compensation, the Court might have jurisdiction.  In such a scenario, the County could continue to enforce its Ordinance and the Plaintiffs could, if effected, seek just compensation, with the declaratory judgment streamlining the case.  Even assuming that the Complaint can be read to seek declaratory relief on the federal claims, however, that relief sought is limited, as discussed above, to having the Ordinance declared "of no force and effect."  Complaint at 12.  That form of declaratory relief cannot be sought without first pursuing just compensation.  Because the problem is jurisdictional, the Court is not granting the Plaintiffs leave to amend their Complaint to raise that

narrow challenge.  28 U.S.C. § 1653 allows amendment for "[d]efective allegations of jurisdiction . . . ."  This statute, however, allows amendments to cure "defects of form, not substance," and may not be used "to produce jurisdiction where none actually existed."  <u>State Farm Mut. Auto. Ins. Co. v. Narvaez</u>, 149 F.3d 1269, 1272 (10th Cir. 1998)(internal quotation marks omitted).  In <u>State Farm Mut. Auto. Ins. Co. v. Narvaez</u>, the Tenth Circuit held that the plaintiff could not amend its complaint for declaratory judgment filed in federal court for the purpose of adding a claim to satisfy the amount-in-controversy requirement.  <u>See</u> <u>id.</u> at 1270, 1272.  The situation here is similar.  If the Court allowed amendment of the Complaint, it would amount to adding a claim to establish jurisdiction where none existed before and would not be curing a technical defect in the pleadings where jurisdiction otherwise existed.  <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v. Narvaez</u>, 149 F.3d at 1272; <u>Brennan v. University of Kan.</u>, 451 F.2d 1287, 1289 (10th Cir. 1971)(denying leave to amend complaint to add Fourth-Amendment claim that would create otherwise deficient federal-question jurisdiction).

## III.   <u>THE COURT LACKS JURISDICTION OVER THE REMAINING CLAIMS.</u>

The Plaintiffs have not specifically challenged the County's argument that, if their Takings Clause claim is not ripe, neither are their other constitutional claims.  Instead, they simply contend that, because "the Plaintiffs have at least stated a cause of action that the Ordinance constitutes an unconstitutional taking, by the County's own theory, the remaining claims survive."  Response at 17.  The Plaintiffs thus seem willing to stake the ripeness of their due-process and equal-protection claims on their takings claim being ripe.  Because the Court finds that the Plaintiffs' takings claim is premature, the Court will also dismiss the Plaintiffs' other constitutional claims as not being ripe.

This result is, as the County argues, consistent with Tenth Circuit law.  "The Tenth Circuit repeatedly has held that the ripeness requirement of *Williamson* applies to due process and equal

protection claims that rest upon the same facts as a concomitant takings claim." Bateman v. City of West Bountiful, 89 F.3d 704, 709 (10th Cir. 1996)(citing cases).  The Plaintiffs' due-process and equal-protection claims are different theories of liability resting upon the same foundation as the takings claim, and therefore their "due process and equal protection claims are subsumed within 'the more particularized protections of the [Takings] Clause.'" Bateman v. City of West Bountiful, 89 F.3d at 709 (quoting Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir.1991))(alteration in Bateman v. City of West Bountiful).

In addition, Count IV of the Complaint is simply a statement of a cause of action under 42 U.S.C. § 1983 and a request for injunctive relief and attorney's fees.  Like the other constitutional claims in Counts II and III, Count IV must therefore also be dismissed along with the takings claim in Count I.  That leaves only Counts V and VI, which both assert state law causes of action.  Having dismissed all the federal claims in this case on jurisdictional grounds -- the claims against the City of Santa Fe for lack of standing and the claims here on ripeness and standing grounds -- the Court lacks the ability to exercise supplemental jurisdiction over the state claims.  See 1mage Software, Inc. v. Reynolds and Reynolds Co., 459 F.3d 1044, 1049 n.6 (10th Cir. 2006)(noting that district courts must have subject-matter jurisdiction over at least some claim before being able to exercise supplemental jurisdiction over other claims).  The Court must therefore dismiss the state claims as well.  In sum, the Court dismisses all the claims brought against the County of Santa Fe for lack of subject-matter jurisdiction.

**IT IS ORDERED** that the Defendant County of Santa Fe's Motion to Dismiss Plaintiffs' Complaint and Memorandum in Support is granted.  All claims that the Plaintiffs have raised against the Defendant, County of Santa Fe, are dismissed for lack of subject-matter jurisdiction.

-60-

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Ronald J. VanAmberg
VanAmberg Rogers Yepa & Abeita, LLP
Santa Fe, New Mexico

    *Attorneys for the Plaintiffs*

Karl H. Sommer
Karl H. Sommer & Associates PA
Santa Fe, New Mexico

    *Attorneys for the Prospective Intervenor-Plaintiff Santa Fe*
      *Area Home Builders Association, Inc.*

Frank D. Katz
Santa Fe City Attorney's Office
Santa Fe, New Mexico

-- and --

Donna M. Connolly
John C. Bienvenu
Rothstein Donatelli Hughes Dahlstrom
  Schoenburg & Bienvenu LLP
Santa Fe, New Mexico

    *Attorneys for Defendant City of Santa Fe*

Stephen C. Ross
Santa Fe County Attorney's Office
Santa Fe, New Mexico

 -- and --

Mark A. Basham
Basham & Basham,  P.C.
Santa Fe, New Mexico

-- and --

Robyn B. Hoffman
French & Associates, P.C.
Albuquerque, New Mexico

-- and --

Robert H. Freilich
Miller Barondess, LLP
Los Angeles, California

*Attorneys for Defendant County of Santa Fe*